[No. 34890.    Department One.    September 24, 1959.]

LLOYD D. WHITNEY et al., Respondents, v. EDWARD McKAY et al., Appellants.[1]

[1]Reported in 344 P. (2d) 497.

*Lewis & Earl,* for appellant.

*Clyde C. Houston,* for respondent.

*Miller, Jansen & Sackmann,* for respondent Barnett.

DONWORTH, J.—This is a lien foreclosure action brought by a building contractor to recover the balance claimed to be due for the construction of a residence in the town of Othello which had been built pursuant to an oral contract.

Plaintiff, Lloyd Whitney, is a carpenter and mason who does building and construction work by contract. Defendants, Edward and Betty McKay, are farmers residing near Othello. Plaintiff and defendants had been friends for some time and, during the latter part of 1955, they discussed several proposals to have a home constructed for defendants in the town. Defendants' original house plan was estimated by plaintiff to cost $15,000. Subsequently, defendants submitted a revised plan, which was estimated by plaintiff to cost $18,000. The parties then agreed orally that plaintiff would build a house in accordance with the revised plan on a cost-plus-ten per cent basis.

Work was commenced about the first of November, 1955. Soon after the excavation of the basement had started, a change in the plans was mutually made by both parties. It was agreed that the entire basement area should be excavated and a full basement constructed instead of the three-fourth basement called for in the original plans. This change necessitated the removal of approximately eighty additional cubic yards of earth, as well as making other substantial changes in the wiring and finishing of the basement. No price was agreed upon between the parties as to the additional cost of these changes, nor was any record kept by plaintiff of the extra labor and material necessitated thereby.

After the basement area had been excavated, the foundation walls erected, and the subflooring laid, cold weather and defendants' lack of finances stopped the construction work.

Thereafter, both parties sought financing, which resulted in the Peoples National Bank of Washington setting up a construction fund of $20,000 in defendants' name. This fund consisted of $2,000 in cash supplied by defendants, a $15,000 loan by the bank, secured by a mortgage on the property, and a $3,000 loan by the bank on a chattel mortgage on de-

fendants' tractor. The real-estate mortgage was recorded on April 12, 1956.

After construction had resumed in April, 1956, defendants decided to replace standard windows with thermopane units, ordered two additional fireplaces, one additional bathroom, replaced standard bathroom fixtures with colored and more expensive fixtures, added more than twenty feet of built-in kitchen cabinets, ordered built-in gun racks, desk, and dresser units, added an additional range circuit and other electrical circuits, ordered built-in oven, surface stove unit, a dishwasher, a basement vault room, rough-in plumbing for bar sink in the basement, added four feet to the attached garage, and made various other expensive modifications to such an extent that both parties began to disregard the original blue prints altogether.

Many of these changes were made by defendants without even consulting plaintiff. It appears that these various changes increased the cost of the house by about $10,000, although no record as to their cost was ever kept by plaintiff, nor did defendants ever request to be advised as to how much these changes would increase the cost of the house over the original estimate of $18,000. As a result, the $20,000 in the building fund was soon exhausted, leaving various bills for labor and material unpaid.

When the house was nearing completion, plaintiff presented to defendants his cost sheet showing more than $7,-000 in unpaid bills and offered to reduce his commission to $1,500 if defendants would pay it immediately. Payment not being made, plaintiff terminated work on the house in August, 1956, and, in October, 1956, he filed a lien claim against defendants' property, stating that he commenced to perform labor and furnish material in November, 1955; that the total cost of the labor and materials was $29,169.90; that $20,000 had been paid upon the account, and that a balance of $9,169.90 remained due and owing with interest thereon at six per cent per annum from August 26, 1956. During the month of October, 1956, the various unpaid subcontractors also filed their lien claims.

On January 7, 1957, plaintiff, pursuant to RCW 60.04.110, mailed to defendants a notice of demand that defendants pay the various subcontractors' liens which were valid and thereby avoid costs of suit. The notice of demand was ignored by defendants.

Plaintiff then initiated this suit to foreclose his contractor's lien, naming the other lien claimants (subcontractors) and Peoples National Bank as parties defendant.

Plaintiff alleged an oral contract with defendants wherein plaintiff was to construct a house for cost plus a ten per cent commission for his supervision and direction of the work and prayed that his lien for $9,169.90 be foreclosed. Plaintiff also furnished a bill of particulars giving a complete breakdown of the expenses incurred by plaintiff in the construction of the house.

The various subcontractor lien claimants answered the complaint and cross-complained for foreclosure of their respective lien claims, except Selden's of Moses Lake, Inc., who was dismissed from the action upon the petition of plaintiff.

Defendants, by answer, denied that plaintiff had a cost-plus-ten per cent contract, and alleged that plaintiff agreed to build the house for cost plus ten per cent or a sum not to exceed $18,000, whichever was lower, and that certain extras had been ordered by defendants for which they had paid $2,000 in full satisfaction thereof. Defendants further alleged that plaintiff had not completed the house pursuant to the contract and cross-complained for the work which was not finished. Defendants denied the allegations contained in the cross-complaints of the various subcontractor lien claimants for the foreclosure of their respective liens.

The case was tried to the court, sitting without a jury. Following a trial which lasted five days, the court rendered a memorandum opinion, made findings of fact and conclusions of law, and rendered a decision wherein it found that plaintiff and defendants had entered into a cost-plus-ten per cent contract, and that the total cost was $26,238.01 for labor and materials, plus a $1,500 commission fee for supervision by plaintiff. Attorneys' fees of plaintiff and of sub-

contractors Horne, Gaylor, Barnett, and Hurliman were taxed against defendants, and lien foreclosure was allowed each of these subcontractors for the respective amounts of their claims. The lien claims of Othello Lumber Yard, Inc., and Bunch-Finnigan, Inc., were disallowed, but they were granted judgment against plaintiff personally with interest and costs.

Since there was no court reporter present at the trial, the testimony was not taken down and transcribed. No statement of facts was ever certified by the trial court. However, as an introduction to its memorandum opinion, the trial court prepared and filed a narrative account of what transpired at the trial, which is entitled "statement of facts."

Defendants (hereinafter referred to as appellants) appeal from the judgment granted to plaintiff against them, and further appeal from the judgment granted defendants and cross-complainants Barnett, Horne, and Gaylor, foreclosing their liens against defendants' property. It is conceded by all parties that the mortgage held by Peoples National Bank is a lien on appellants' property, having priority over the several lien claims foreclosed by the trial court's decree. It is so provided therein.

Defendant Barnett is the only *subcontractor* who has submitted a brief on this appeal.

Appellants present the following assignments of error: (1) The court erred in granting judgment for plaintiff Whitney and foreclosing his lien; (2) the court erred in granting judgment foreclosing the lien of John Barnett; (3) the court erred in granting judgment foreclosing the lien of Elwood Gaylor; (4) the court erred in granting judgment foreclosing the lien of Charlie F. Horne.

We shall dispose of the assignments in the order listed.

Appellants do not assign error to any finding of fact. Rather, they challenge the sufficiency of the findings to support the judgment.

In their answer, appellants alleged that respondent Whitney (herein referred to as the contractor) had failed to complete the work as required by the contract in that certain specified items were left unfinished. Since the trial

court did not make any finding on this issue, it is argued that the findings of fact do not support the decree foreclosing the contractor's lien. It is asserted that, as a matter of law, the contractor was required to prove that he had completed the contract as a condition precedent to recovery for a breach thereof.

In the trial court, appellants contended that the contract between the parties was a cost-plus contract to build the house as specified therein, with a proviso that the total cost would not exceed $18,000. The trial court resolved this issue of fact in favor of the plaintiff in finding of fact No. 2, wherein the court found that, under the terms of the contract which the parties had *in fact* entered into, the contractor was to be paid for the actual cost of construction plus a ten per cent commission. Thus the contractor cannot be charged with failing to complete a contract which, in effect, was found by the trial court to never have existed.

In its memorandum opinion, the court stated:

"The Defendants McKays further allege as a defense that the contract was not complete in certain respects. The Court has determined that this was a cost-plus contract, and the work that was not completed has not been charged for and the Defendants have not sustained damages in this connection. . . ."

It is next contended by appellants that the findings are insufficient to support a decree foreclosing the contractor's lien because no findings were made as to the date when he completed his work or as to the date when his lien claim was recorded.

Finding of fact No. 3 reads as follows:

"That plaintiff *duly*, properly and *timely* filed proper notice of claim of lien and brought suit for foreclosure thereof, and having furnished proof and evidence thereof, plaintiff is entitled to judgment against defendants Edward McKay and Betty McKay for the amount due plus reasonable attorneys fees and costs, secured by a lien against said premises." (Italics ours.)

We have frequently announced the rule that the trial court is not required to include evidentiary facts in

its findings, but need only find the ultimate facts upon the material issues. *Wentz v. T. E. Connolly, Inc.*, 45 Wn. (2d) 127, 273 P. (2d) 485 (1954), and cases cited therein. Finding of fact No. 3 discloses that the trial court took note of the evidentiary facts concerning the contractor's lien and found, as an ultimate fact, that such lien was *duly* and *timely* filed. The words "duly and timely filed" can only mean that the statutes pertaining to lien foreclosures have been properly complied with. Since the evidence upon which finding of fact No. 3 was based is not in the record, appellants cannot have assigned error to that finding. Therefore, the validity of the contractor's lien must be accepted as a fact of the case. *Theurer v. Condon*, 34 Wn. (2d) 448, 209 P. (2d) 311 (1949); Rule on Appeal 43, 34A Wn. (2d) 47.

Appellants further argue that the contractor was awarded an excessive amount for labor in the decree of foreclosure.

The court allowed the contractor $2,679 for his own labor. At the trial, the contractor testified that this sum represented both his charge for supervision and for his own labor and that he could not segregate these items. Appellants contend that the contractor was allowed to collect twice for the same item of cost because the court allowed him $1,500 for supervision in addition to the $2,679. Thus, say appellants, since the contractor attempted to charge and has succeeded in collecting twice for the same item of cost, he has shown bad faith and is thereby precluded, under the case of *Radley v. Raymond*, 34 Wn. (2d) 475, 209 P. (2d) 305 (1949), from recovering any allowance for his attorney's fee for the lien foreclosure.

Appellants, in so contending, have failed to distinguish between supervision at the operative level and supervision at the administrative level. In the case at bar, the contractor performed supervisory tasks at both levels. His bill of particulars shows that he spent 893 hours on the job. Whatever portion of this time was devoted to supervision represented services performed by the con-

tractor as labor foreman and was properly included in the charge of $2,679 for labor. The sum of $1,500 awarded by the court was to compensate him for services as general contractor, which, under the original contract, was to be ten per cent of the total cost of the house but was voluntarily reduced by the contractor to $1,500. The supervision performed by the contractor for this ten per cent of cost was of a general type, and included such things as hiring, firing, co-ordinating the work of subcontractors and laborers, the ordering and expediting the delivery of materials, etc.

Even if we were to assume that there was an overlapping of charges by the contractor in this case, such fact would not lend any support to appellants' contention that he would not be entitled to attorney's fees in the lien foreclosure. In the *Radley* case, *supra,* we held that the determinative question was whether the overcharge was made with the intent to defraud or in bad faith, and that an overcharge *knowingly* made was in bad faith. Appellants have not alleged, nor is there any finding, that the alleged overcharge by the contractor was made *knowingly* or with the intent to defraud.

It is next contended that the contractor did not give sufficient notice to appellants to pay the claims of the subcontractor lien claimants. In support of this contention, appellants rely upon *Irwin v. Sanders,* 49 Wn. (2d) 600, 304 P. (2d) 697 (1956).

In that case, this court held that a general request by a contractor to the owner for more money to pay bills was insufficient as a demand that the owner pay a subcontractor's lien claim. During the course of the opinion we stated:

". . . The contractor may elect to pay the claim or authorize the owner to pay it, if funds are due him under the terms of the construction contract. In the instant case, the contractor made no demand upon the owners to pay the C. B. Brown & Son claim. *He simply stated that he needed more money.* . . ." (Italics ours.)

■ Appellants' contention is conclusively answered by finding of fact No. 12, wherein the trial court found:

"That plaintiff gave due and timely notice to defendants McKay of demand for settlement of the various claims out of moneys due plaintiff; and defendants McKay, by their failure to settle said claims, should be held responsible for all costs of this action."

This finding establishes the sufficiency and validity of the notice in all respects, and since appellants have not assigned error thereto (and cannot, on the record before us), it must be considered as a fact in the case. *Theurer v. Condon, supra;* Rules on Appeal 43, *supra.*

Appellants also attack the validity of the decree awarding foreclosure of the liens of the subcontractors Barnett, Horne, and Gaylor, in that they did not allege any notice of the commencement of delivery of materials to appellants, as required by RCW 60.04.020, and the court failed to make any findings as to the amount due said lien claimants for labor as distinguished from materials.

■■ It was not necessary for the court to enter formal findings as to the amount due the lien claimants for labor as distinguished from materials for the reason that the total amount. stated in the decree of foreclosure in each instance was for labor alone. In such a case, no notice to the owner is required. *Heim v. Elliott,* 66 Wash. 361, 119 Pac. 826 (1911); *Hallett v. Phillips,* 73 Wash. 457, 132 Pac. 51 (1913).

■ Appellants' final contention that the findings are insufficient to support the decree foreclosing the liens of the subcontractors Barnett, Horne, and Gaylor, because no findings were made as to the dates they respectively completed their work or as to the dates on which they filed their lien claims, is fully answered by our prior discussion of this identical contention with respect to the contractor's lien.

Since findings of the trial court adequately support the decree of foreclosure entered by the trial court, its decree is hereby in all respects affirmed.

HILL, ROSELLINI, OTT, and HUNTER, JJ., concur.