[No. 2810-1.   Division One.   April 26, 1976.]

THOMAS WYMAN, *Respondent,* v. DONALD WALLACE, *Appellant.*

*Nuxoll, Stroh, Newsum & Funk, P.S., Inc.,* and *Jay Nuxoll,* for appellant.

*Jon Marvin Jonsson,* for respondent.

PER CURIAM.—

*Quaere:* Should the common-law action for the alienation of affections of a spouse be abolished?

We conclude that it should be.

The action for alienation of affections, insofar as it pertains to relationships between spouses, is an action carried into the law of Washington by its adoption of the common law of England. *Beach v. Brown,* 20 Wash. 266, 55 P. 46 (1898). We adopted the common law prior to statehood in 1863. RCW 4.04.010; *In re Hudson,* 13 Wn.2d 673, 126 P.2d 765 (1942). *Freehe v. Freehe,* 81 Wn.2d 183, 500 P.2d 771 (1972), recognized that when a rule of law has had its origins in the common law and therefore is a creation of the courts, courts may change or modify such a rule. Unless a maxim of the law has come from the legislature, it is proper for appellate courts to examine and change precepts which are incompatible with present-day society.

*Cooper v. Runnels*, 48 Wn.2d 108, 291 P.2d 657, 57 A.L.R.2d 597 (1955); *Borst v. Borst*, 41 Wn.2d 642, 251 P.2d 149 (1952). When a judicial conclusion of the past which established a public policy comes again before the courts, accepted assumptions should be reexamined in the light of current conditions and thinking. *Pierce v. Yakima Valley Memorial Hosp. Ass'n*, 43 Wn.2d 162, 260 P.2d 765 (1953); Peck, *The Role of the Courts and Legislatures in the Reform of Tort Law*, 48 Minn. L. Rev. 265 (1963).[1] We question the action for alienation of affections in the light of contemporary opinion, having in mind the ramifications we observe of the impact of the action upon those involved directly and indirectly.

During the last four decades the most populous states of the union have repudiated the action by statute. The legislatures of Alabama, California, Colorado, Connecticut, Florida, Illinois, Indiana, Maryland, Michigan, Nevada, New Jersey, New York, Pennsylvania, and Wyoming abolished alienation of affections and collateral actions completely or permitted only vestiges to remain.[2] In only one state, Louis-

---

[1]"The life of the law has not been logic: it has been experience. The felt necessities of the time, the prevalent moral and political theories, intuitions of public policy, avowed or unconscious, even the prejudices which judges share with their fellow-men, have had a good deal more to do than the syllogism in determining the rules by which men should be governed. The law embodies the story of a nation's development through many centuries, and it cannot be dealt with as if it contained only the axioms and corollaries of a book of mathematics. In order to know what it is, we must know what it has been, and what it tends to become. We must alternately consult history and existing theories of legislation. But the most difficult labor will be to understand the combination of the two into new products at every stage. The substance of the law at any given time pretty nearly corresponds, so far as it goes, with what is then understood to be convenient; but its form and machinery, and the degree to which it is able to work out desired results, depend very much upon its past." O. Holmes, *The Common Law* 1-2 (1881).

[2]Ala. Code Tit. 7, § 115 (Supp. 1973); Cal. Civ. Code § 43.5 (West 1954); Colo. Rev. Stat. Ann. § 13-20-202 (1973); Conn. Gen. Stat. Ann. § 52-572b (Supp. 1976); Fla. Stat. Ann. § 771.01 (1964); Ill. Ann. Stat. ch. 68, §§ 34-40 (Smith-Hurd 1959); Ind. Stat. Ann. § 34-4-4-1 (Burns Supp. 1975); Md. Ann. Code, Courts & Judicial Proceedings § 5-301

iana, surprisingly a state whose laws are based upon the civil law, has the action been abolished by the courts. The preamble to the New York statute enunciates the evils of the action for alienation of affections, reciting as follows:

> The remedies heretofore provided by law for the enforcement of actions based upon alleged alienation of affections . . . having been subjected to grave abuses, causing extreme annoyance, embarrassment, humiliation and pecuniary damage to many persons wholly innocent and free of any wrongdoing, who were merely the victims of circumstances, and such remedies having been exercised by unscrupulous persons for their unjust enrichment, and such remedies having furnished vehicles for the commission or attempted commission of crime and in many cases having resulted in the perpetration of frauds, it is hereby declared as the public policy of the state that the best interests of the people of the state will be served by the abolition of such remedies.

Thompson's Laws of New York, Part II, Civil Practice Act, art. 2-A, § 61-a, p. 1627 (1939). The comment is made in M. Grossman, *The New York Law of Domestic Relations* § 313 (1947), that the New York legislature took action to "curb the vicious practice" of suits for alienation of affections because of "the fact that it was common knowledge that the great majority of such actions brought were in the nature of legalized blackmail."

We alluded to the fact that the courts of Louisiana do not recognize the action. In *Moulin v. Monteleone*, 165 La. 169, 115 So. 447 (1927), the Supreme Court of Louisiana held that no right of action for the alienation of a spouse's affections existed in that state. The court gave a number of reasons why the action would not be allowed. Among the reasons enunciated were that the damages allowed in alienation of affections actions were essentially punitive damages which were not permitted in Louisiana, and that the right of action at common law

---

(1974); Mich. Stat. Ann. § 27A-2901 (1962); Nev. Rev. Stat. § 41.380 (1975); N.J. Stat. Ann. § 2A:23-1 (1952); N.Y. Civ. Rights Law § 80-a (McKinney Supp. 1975); Pa. Stat. Ann. Tit. 48, § 170 (Purdon's 1965); Wyo. Stat. Ann. § 1-728 (1957).

is in some measure based upon the same obsolete idea that the wife is one of the husband's chattels, and that her companionship, her services and her affections are his property, for the loss of which, by wrongful inducement on the part of another man, the husband ought to be compensated with money.

*Moulin v. Monteleone, supra* at 176.

A number of legal writers have criticized the action also and encouraged its abrogation. As stated in Feinsinger, *Current Legislation Affecting Breach of Promise to Marry, Alienation of Affections, and Related Actions,* 10 Wis. L. Rev. 417, 430 (1935):

The justification for the abolition of such actions lies in the fictitiousness of their underlying assumptions, the unwillingness of courts to modify the governing rules to accord with social realities, and the ineptitude of the judicial process to prevent vicious settlements out of court.

■ The action is of long standing in Washington, but neither its validity nor its consequences have been questioned heretofore by the courts. It is established that exemplary or punitive damages are not recoverable in an alienation of affections case in Washington, compensatory damages only being permitted. *Essig v. Keating,* 158 Wash. 443, 291 P. 323 (1930); *Phillips v. Thomas,* 70 Wash. 533, 127 P. 97 (1912).[3] However, the court was not confronted with a request to inquire into the true nature of any award made in an action involving the alienation of the affections of a spouse in either *Essig v. Keating* or *Phillips v. Thomas.* In our opinion, the element of punishment is so inextricably interwoven into any award of damages for alienation of the affections of a spouse that the true nature of the award is punitive. We have noted that the Louisiana court based its abolition of the action in part upon the punitive nature of the damages awarded, and we concur with its reasoning and conclusions.

In the work on domestic relations selected and edited by

[3]*But see Woldson v. Larson,* 164 F. 548 (9th Cir. 1908).

Professor Rieke of the University of Washington Law School, Professor Rieke observes:

> Note: Actions for alienation of affection and criminal conversation as well as the previously discussed action for breach of the contract to marry, present rather obvious opportunity for coercion, fraud, and injustice. The most serious objection, possibly, lies in the uncertain measurement of damages. Even in jurisdictions permitting only compensatory damages, as Washington, the result will occasionally be a serious injustice to the defendant. This result is more frequently encountered where punitive damages are permitted. Arguably the social utility of the civil actions does not justify the hazards involved, and the desirable inhibition of interference should be left to criminal prosecution for such conduct.

L. Rieke, Domestic Relations Cases and Materials, ch. 4, No. 25, p. 2 (1964 rev.) (unpublished course collection in University of Washington Law Library). We find so little possible social utility in the action, when balanced against the social and individual harm that it can cause, that we cannot justify it in contemporary society. The action brings out in the plaintiff spouse deceit, jealousy, and greed. A prime motivation for bringing the action is often the need of the plaintiff to vindicate his or her position and justify one's own past shortcomings. In many actions the plaintiff sacrifices his or her own dignity to gain revenge, spite and humiliate others, and exact punishment. If divorce proceedings are involved as a collateral matter, the unpredictable rearrangement of assets that might be brought about by a recovery in an alienation of affections action makes it difficult, if not impossible, for the divorce trial judge to balance the needs and abilities of the former husband and wife. Insofar as the defendant is concerned, he or she often would not have been in such circumstances had the marriage been viable in the first instance and strong reciprocal affection present between the spouses. The straying spouse may well have chanced upon the defendant as a refuge from an empty marriage. It is stated by *Lankford v. Tombari*, 35 Wn.2d 412, 213 P.2d 627, 19 A.L.R.2d 462 (1950),

that the gist of alienation of affections is interference with a spouse's mental attitude to the other spouse's personal detriment. In our opinion, a viable marriage is not one where the "mental attitude" of one spouse towards the other is susceptible to interference by an outsider. Such a proposition assumes an inherent fickleness and frailty in human character to which we do not subscribe.[4]

The impact of the proceedings upon any children peripherally involved has not been calculated. It may cause lasting emotional injury to such innocent bystanders, and the possibilities of destroying the relationship between a parent and child are great. Certainly the action does not enhance the reputation of either spouse, but spreads the matter upon the public record to the detriment of all concerned. Even a successful plaintiff is the loser in most aspects. He or she has engaged in self-degradation for money. In all of this, any involved children are, for most purposes, without a voice.

As stated in H. Clark, *The Law of Domestic Relations in the United States* § 10.2, at 267 (1968):

> The reasons underlying abolition of alienation of affections are many and persuasive. One is the opportunities for blackmail which the action provides, since the mere bringing of the action can ruin the defendant's reputation. Another is that lack of any reasonably definite standards for assessing damages and the possibility of punitive damages makes excessive verdicts likely. Still another is the peculiar light which the whole proceeding throws on the nature of marriage, leaving one with the conviction that the successful plaintiff has engaged in something which looks very much like a forced sale of his spouse's affections. Most significantly of all, the action for alienation is based upon psychological assumptions that are contrary to fact. As has been indicated, viable, contented marriages are not broken up by the vile sedu-

[4]Our decision has in mind adult emotions, motivations, strengths, weaknesses, duties, and responsibilities. It pertains solely to the action for the alienation of the affections of a spouse by an unrelated third party. It does not abolish actions for the alienation of the affections of a child. *See Strode v. Gleason,* 9 Wn. App. 13, 510 P.2d 250, 60 A.L.R.3d 924 (1973).

cer of the Nineteenth Century melodrama, though this is what the suit for alienation assumes. In fact the break-up is the product of many influences. It is therefore misleading and futile to suppose that the threat of a damage suit can protect the marital relationship. For all these reasons the abolishing statutes reflect a sound public policy and ought to be enacted more widely than they are.

(Footnote omitted.)

To us the action diminishes human dignity. It inflicts pain and humiliation upon the innocent, monetary damages are either inadequate or punitive, and the action does not prevent human misconduct itself. In our judgment, the interests which the action seeks to protect are not protected by its existence, and the harm it engenders far outweighs any reasons for its continuance.

The judgment is reversed and the action dismissed with prejudice.

Petition for rehearing denied December 9, 1976.

Review by Supreme Court pending February 8, 1977.