[No. 44673.   En Banc.   January 4, 1979.]

Thomas Wyman, *Petitioner*, v. Donald Wallace,
et al, *Respondents*.

*Jon Marvin Jonsson,* for petitioner.

*Nuxoll, Stroh, Newsum & Funk, P.S., Inc.,* and *Jay Nuxoll,* for respondents.

Hicks, J.—Petitioner (Wyman) obtained a judgment against respondent (Wallace) in an action for the alienation of his wife's affection. The Court of Appeals, Division One,

in a per curiam opinion, determined that the cause of action for alienation of affections of a spouse should be abolished, reversed the trial court, and ordered the action dismissed with prejudice. *Wyman v. Wallace,* 15 Wn. App. 395, 549 P.2d 71 (1976). We granted discretionary review and we reverse the Court of Appeals.

The trial court heard this action, sitting without a jury. At the commencement of the trial and again after both parties had rested, Wallace moved to dismiss the action for failure to state a claim, contending that the cause of action for alienation of affections should no longer exist in this state. On both occasions, the trial court denied the motions. Subsequently, judgment was entered against Wallace in the amount of $15,000 and he appealed.

The Court of Appeals concluded that the "interests which the action seeks to protect are not protected by its existence, and the harm it engenders far outweighs any reasons for its continuance." *Wyman,* at 401. The court set forth several policy arguments to justify abolition. In the absence of evidentiary support for these arguments, we are not persuaded that abolition of the action is warranted. Virtually no record of the trial court proceedings was furnished to the Court of Appeals or to this court. The legislature is better equipped to assemble the data to evaluate such a policy change. Indeed, of the considerable number of states which have abolished or modified the action for alienation of affections, all but one have done so by legislative action.[1]

■ The action for alienation of a spouse's affections has been recognized in Washington since territorial days, with the adoption of the English common law in 1863. As the Court of Appeals noted, a rule of law which has its origins in the common law and which has not been specifically enacted by the legislature may be modified or abolished by

---

[1]Of the 22 states which have abolished the action, only one has done so judicially. *See* 12 Gonzaga L. Rev. 547 n.17 (1977), and *Moulin v. Monteleone,* 165 La. 169, 115 So. 447 (1927).

the courts when such revision is mandated by changed conditions. We applied this principle in *Freehe v. Freehe*, 81 Wn.2d 183, 500 P.2d 771 (1972), when we expanded tort liability by abolishing the common–law defense of interspousal tort immunity. Judicial abolition of a long–standing cause of action, however, should be supported by clear reasons and an evident factual basis. Such substantiation is lacking in the present record.

Although some commentators have criticized the actions for alienation of a spouse's affections and breach of promise to marry for the reason that such actions have been subject to grave abuses,[2] we are not aware of any abuse of either cause of action in the courts of this state. In the absence of some evidence to the contrary, we should assume trial courts are using the tools at their disposal to adequately protect the parties.

We lack sufficient basis upon which to conclude that the damages in alienation actions are essentially punitive or that the action is used for blackmail.[3] Many civil actions may by the mere act of their filing, damage reputations. An action of libel or of consumer fraud may have such an effect and could arguably be used as a means of "blackmail." It is not necessary to eliminate these actions however, in order to prevent abuse. Rather the remedy should be narrowly aimed at the particular evil which arises. The damages in an alienation of affections case are measured by the loss of consortium and conjugal affection. *Boyle v. Clark*, 47

---

[2]In *Stanard v. Bolin*, 88 Wn.2d 614, 622, 565 P.2d 94 (1977), we upheld the cause of action for breach of promise against a claim that it was contrary to public policy. We did, however, modify that action "to the extent that a plaintiff cannot recover for loss of expected financial and social position, because marriage is no longer considered to be a property transaction."

[3]The articles to which we are referred include N. Feinsinger, *Legislative Attack on "Heart Balm"*, 33 Mich. L. Rev. 979 (1935), and N. Feinsinger, *Current Legislation Affecting Breach of Promise to Marry, Alienation of Affections and Related Actions*, 10 Wis. L. Rev. 417 (1937). These articles were written in the period that produced many of the statutory changes and suggest abuses during that time. They do not provide information as to any current misuse of the action.

Wn.2d 418, 287 P.2d 1006 (1955). Punitive damages may not be recovered. *Essig v. Keating,* 158 Wash. 443, 291 P. 323 (1930). The action can hardly be characterized as more nebulous than many wrongful death actions for which damages are regularly ascertained. *See* RCW 4.24.010; *Hinzman v. Palmanteer,* 81 Wn.2d 327, 401 P.2d 1228 (1972); *Baxter v. Greyhound Corp.,* 65 Wn.2d 421, 397 P.2d 857 (1964).

Rather than abolishing causes of action, this court has been at the forefront in adopting new remedies and expanding tort liability. *See Freehe v. Freehe, supra* (abandoning interspousal immunity for personal injury); *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969) (adopting strict products liability theory of Restatement (Second) of Torts § 402A (1965)); *Langan v. Valicopters, Inc.,* 88 Wn.2d 855, 567 P.2d 218 (1977) (holding that crop dusting is an abnormally dangerous activity for purposes of imposing strict liability); *Grimsby v. Samson,* 85 Wn.2d 52, 530 P.2d 291, 77 A.L.R.3d 436 (1975) (adopting theory of Restatement (Second) of Torts § 46(1), (2), and (2)(a) (1965), regarding the tort of outrage); *Halvorson v. Dahl,* 89 Wn.2d 673, 574 P.2d 1190 (1978) (holding that failure to enforce the housing code renders a city liable in tort for the resulting harm); *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978) (holding that an insurance company's unjustified refusal to pay policy benefits renders it liable for damages under the Consumer Protection Act); *Kelley v. Howard S. Wright Constr. Co.,* 90 Wn.2d 323, 582 P.2d 500 (1978) (determining that a general contractor has a duty to insure that common work areas are safe for all persons working therein). Consequently, we believe any determination to abolish the action for alienation of a spouse's affections as an anachronism incompatible with contemporary mores or opinion, should be made by the legislature.

Wallace argues that two 1973 legislative acts, the dissolution of marriage act and the equal rights act, significantly affected the cause of action for alienation of a spouse's

affection. The dissolution act, RCW 26.09, made sweeping changes in the law regarding the relationship between spouses, but it did not purport to modify the rights of a spouse against a third party. That act cannot be read as conferring on any person the right or privilege to interfere with a marital relationship, however insubstantial that relationship might be.

The equal rights act, Laws of 1973, 1st Ex. Sess., ch. 154, is also inapplicable. This court has long recognized that a woman has a cause of action for alienation of the affections of her husband. Any disability that a wife may have once had in maintaining such an action in her own right was abolished in Washington by statute. Code of 1881, §§ 2396, 2398, codified in Hill's Code, §§ 1408, 1409 (RCW 26.16.150, .160). *See Beach v. Brown,* 20 Wash. 266, 55 P. 46 (1898).

Wallace also assigned error to the trial court's findings on damages and argues that even if the action is upheld, the judgment should be reduced. Because the evidence on which that finding was based is not included in the record furnished to this court, error was not properly assigned and we must accept the court's assessment of damages. *Whitney v. McKay,* 54 Wn.2d 672, 344 P.2d 497 (1959).

The decision of the Court of Appeals, Division One, is reversed (*Wyman v. Wallace,* 15 Wn. App. 395, 549 P.2d 71 (1976)), and the judgment of the trial court is reinstated.

WRIGHT, C.J., and ROSELLINI, HAMILTON, and STAFFORD, JJ., concur.

UTTER, J. (dissenting)—The majority, while recognizing courts have the authority to modify or abolish the action for alienation of a spouse's affections, declines to do so and defers to the legislature to make whatever change may be needed. Deference by the courts to the legislature is proper in some fields, particularly in the exercise of the police power to accomplish economic regulation where the legislative fact–finding process is uniquely suited to that task. *Aetna Life Ins. Co. v. Washington Life & Disability Ins.*

*Guar. Ass'n,* 83 Wn.2d 523, 534, 520 P.2d 162 (1974). An overly broad deference to the legislature, however, assumes they have had the opportunity to reflect upon all areas of law needing reform and have consciously chosen not to act in those fields where no action is taken. This does not accurately reflect the reality for the modern legislature. Institutional limitations on legislatures now exist such that only the most compelling needs may be acted upon. The expectation, unfortunately, is that pressures of time on legislatures will increase, not decrease, and their ability to act as a law–reforming body will become even more limited in the future.

The need for law to change, however, is a constant factor. "[F]lexibility is necessary to enable the law to adapt itself to social change. As a society alters, so do its needs, and a serviceable legal system must be able in its development to take account of new social, political and economic requirements." (Footnote omitted.) J. Salmond, *Jurisprudence* 65 (12th ed. 1966). While restraint in the exercise of judicial power is essential to stability, a realistic use of that power to change outmoded rules is necessary to prevent law from becoming a collection of rules that have no relevance to present conditions. "Courts refusing to overrule precedents outright are virtually forced to accomplish reform by devising a labyrinth of rules with dubious and unpredictable implications." R. Aldisert, *The Judicial Process* 837 (1976).

Law is a process to be shared by courts and legislatures, with a need, however, for a realistic understanding of the strengths and weaknesses of each body in its performance of that role. The time constraints existing on the legislature, and the fact that the rule to be changed is one made by the courts initially, make it entirely proper for this court to examine the need for change in the common–law action for alienation of a spouse's affections. The Court of Appeals in *Wyman v. Wallace,* 15 Wn. App. 395, 549 P.2d 71 (1976), has stated the reasons for abolition of the action. (1) The underlying assumptions to justify the doctrine are fictitious. Viable, contented marriages are not broken up by

an outsider. (2) The judicial process is inept in its ability to police the often vicious out–of–court settlements. (3) The opportunity for blackmail is great as the mere bringing of an action often ruins the defendant's reputation. (4) There are no helpful standards for assessment of damages. (5) The successful plaintiff succeeds in compelling what appears to be a forced sale of the spouse's affections. Its judgment and analysis has been noted with approval in a recent comment, which is the only scholarly review of the case. Comment, *Action for Alienation of Affections of a Spouse Abolished in Washington,* 12 Gonzaga L. Rev. 545 (1977).

The majority emphasizes the dearth of evidence in the record to support the appellate court's analysis. However, the case is equally devoid of evidence justifying retention of the cause of action. It remains the court's duty to seek justice and reason in our interpretation of the common law.

The Court of Appeals concluded, at page 401, "To us the action diminishes human dignity. It inflicts pain and humiliation upon the innocent, monetary damages are either inadequate or punitive, and the action does not prevent human misconduct itself. In our judgment, the interests which the action seeks to protect are not protected by its existence, and the harm it engenders far outweighs any reasons for its continuance."

I agree and would affirm the judgment.

BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur with UTTER, J.

Reconsideration granted April 12, 1979.