[No. 25269-1-I.   Division One.   July 29, 1991.]

PACIFIC ERECTORS, INC., ET AL, *Plaintiffs,* v. GALL LANDAU YOUNG CONSTRUCTION CO., INC., ET AL, *Respondents,* SEATTLE SCHOOL DISTRICT NO. 1, ET AL, *Defendants,* RICHARD C. HEDREEN, ET AL, *Appellants.*

*Gregory R. Harris* and *John R. Tomlinson, Jr.,* for appellants.

*David H. Karlen, Harlan Hatfield, Kris J. Sundberg,* and *Oles, Morrison & Rinker,* for respondents.

WEBSTER, J. — Richard C. and Elizabeth Hedreen, Puget Sound Bank, and Washington Mutual Savings Bank (hereinafter Hedreen) appeal several judgments in a foreclosure action to enforce mechanics' liens against Hedreen's interest in property known as Jefferson Square. As to respondent Gall Landau Young Construction (GLY), Hedreen claims the trial court erred in (1) denying Hedreen's motion to dismiss GLY 's foreclosure action, (2) imposing CR 11 sanctions against Hedreen, (3) granting summary judgment in favor of GLY, (4) awarding GLY

attorney's fees, and (5) miscalculating the amount of prejudgment interest owed GLY.[1]

As to respondent Expert Drywall (Drywall), Hedreen asserts that the trial court erred (1) in dismissing Hedreen's cross claims against Drywall for defective performance when Hedreen contracted directly with Drywall, and (2) applying the diminution-in-market-value test rather than the cost-of-repair test in determining the amount of Hedreen's offset against Drywall.

## FACTS

In late 1985 Richard Hedreen created Parkside Building Company, which he incorporated to serve as general contractor in building Jefferson Square. Jefferson Square is located on property owned by the Seattle School District, which entered into a 99-year lease with Hedreen. Hedreen has always been the sole stockholder of Parkside, as well as an officer and director. Hedreen, as representative of Parkside, subcontracted with GLY to perform structural concrete work, and with Drywall to perform the interior plastering and drywall. In late 1986, performance and payment disputes arose between Parkside and GLY and Drywall. The trial court ruled that GLY could not pierce Parkside's corporate veil to hold Hedreen personally liable for Parkside's debts. The contract disputes between GLY and Parkside were submitted to arbitration. The arbitration panel awarded GLY $836,969 plus interest and gave GLY an extension to complete its performance under the contract. The arbitration award was affirmed by the Superior Court on March 11, 1988.

While the arbitration was pending, GLY's subcontractors, Pacific Erectors, Inc., and Steelform Contracting Co., brought suit against GLY. Another subcontractor, Pacific Rainier Roofing Company, brought a lien foreclosure action against Hedreen, joining Drywall as a defendant. These suits were combined and GLY, Drywall, and other

---

[1]After oral arguments, Hedreen dismissed the portion of his appeal pertaining to the trial court's dismissal of his negligent construction claims.

lien claimants were joined as defendants in an amended complaint. Both GLY and Drywall each asserted a cross claim against Hedreen to foreclose on its mechanics' lien. Drywall also asserted that Hedreen was personally liable for extra work performed by Drywall on the project. Hedreen asserted cross claims against both GLY and Drywall.

### GLY v. Hedreen

On November 25, 1987, GLY filed its answer, counterclaim, and cross claim pursuant to CR 12, in which it asserted its mechanics' lien against Hedreen and all of the other defendants. On January 21, 1988, Pacific Erectors obtained ex parte an order that dispensed with any requirements of service between defendants, deemed all cross claims denied, and deemed service of all pleadings on plaintiffs as notice to all parties. The Superior Court issued the order pursuant to CR 5(c). GLY received a copy of the order on February 5, 1988, and, relying on the order, did not serve a copy of its cross claim on Hedreen within 90 days from the date of its joinder as a party in the action.[2] Hedreen did not receive a copy of the court's CR 5(c) order.

GLY learned that Hedreen disputed the validity of its mechanics' lien against his property and moved for partial summary judgment to establish that Hedreen had been properly served. Alternatively, GLY requested equitable relief extending the time for serving its cross claim. Hedreen moved that GLY 's cross claim be dismissed. On May 3, 1988, the Superior Court ordered that Hedreen was deemed served under RCW 60.04.100.

Hedreen asserted cross claims against GLY alleging negligent construction and defective performance. GLY moved to strike the pleadings arguing they were res judicata and failed to state a claim. GLY also moved for CR 11 sanctions. The court granted both motions.

---

[2] It is unclear whether GLY served Puget Sound Bank or Washington Mutual Savings Bank.

GLY then moved for summary judgment to establish the amount and validity of its lien and the priority of its lien claims over the interests of Puget Sound Bank and Washington Mutual Savings Bank. The court granted summary judgment on both issues.

### Drywall v. Hedreen

In several instances at Parkside's request, Drywall performed extra work not part of the original subcontract. When the project was nearly completed, Drywall and Hedreen agreed on a price of $60,969 for all except five items of the extra work. Once the agreement had been reached, Hedreen claimed that the amount should be offset by $49,703 for allegedly defective work and sent Drywall a personal check for the difference, $11,266.

Hedreen asserted cross claims against Drywall, alleging defective performance. Drywall moved to dismiss Hedreen's cross claims. The court granted the motion on September 12, 1989. The court found that Hedreen and Drywall entered into a contract to liquidate Drywall's in rem lien claim against Hedreen's property, which was separate from the construction contract. The court held that only Parkside could assert a claim against Drywall for defective work, because Hedreen, personally, was not a party to the construction contract with Drywall. A trial was held to establish the amount of Drywall's lien. The trial court concluded that Drywall had a valid lien against Hedreen's interest in Jefferson Square in the principal amount of $49,079.20. Thereafter, the court entered a single final judgment and awarded attorney's fees.

### DISCUSSION

We first address whether GLY failed to comply with the notice requirements of RCW 60.04.100. That provision states in part:

> No lien created by this chapter binds the property subject to the lien for a longer period than eight calendar months after the claim has been filed unless an *action be commenced* in the proper court within that time to enforce such lien . . ..

(Italics ours.) In *City Sash & Door Co. v. Bunn*, 90 Wash. 669, 156 P. 854 (1916), the court held that the 8-month period in RCW 60.04.100 was not a statute of limitation, but rather a limit on the duration of the lien. Thus, a plaintiff lienor was required to both file and serve its complaint within the 8-month statutory period. *City Sash & Door*, at 673. Fifty-eight years later, in *Curtis Lumber Co. v. Sortor*, 83 Wn.2d 764, 522 P.2d 822 (1974), a 5-to-4 majority of the Washington Supreme Court overruled *City Sash & Door*, holding that the 8-month period was "a statute of [limitation] upon the duration of a mechanics' lien." *Curtis*, at 767. The *Curtis* court held that an action to enforce a mechanics' lien did not expire under RCW 60.04.100 when the lienor filed its complaint to foreclose within the statutory period, but did not serve a necessary party within the statutory period. The court reasoned that the 8-month period could be tolled pursuant to CR 3 and RCW 4.16.170 either by filing a complaint or by serving a summons and complaint.[3] The court did not decide whether a lien proceeding under RCW 60.04.100 was a special proceeding which would take precedence over conflicting, general rules of civil procedure. Instead, the *Curtis* decision rests on the premise that procedural terms should be construed consistent with the rules of civil procedure. *See* CR 81(a).

Following the *Curtis* decision, the Legislature amended RCW 60.04.100 by adding the following language:

> an action to enforce such lien shall not be timely commenced unless the filing of summons and complaint in a court of competent jurisdiction shall be made prior to the expiration of the eight-month period, and service of the summons and complaint shall be made upon all necessary parties personally, or by commencement of service by publication, *not later*

---

[3]RCW 4.16.170 is known as the "tentative commencement rule" and provides that an action shall be deemed commenced for the purpose of tolling any statute of limitation when the complaint is filed or summons served, whichever occurs first. However, if following service, the complaint is not filed within 90 days, or if following filing, service is not made within 90 days, "the action shall be deemed to not have been commenced for purposes of tolling the statute of limitations." RCW 4.16.170.

*than ninety days after the filing of the summons and com-*
*plaint.*

(Italics ours.) Laws of 1975, 1st Ex. Sess., ch. 231, § 1.

■ The 1975 amendments created "specific rules for filing and service which must be followed in order to preserve a lien claim." *Queen Anne Painting Co. v. Olney & Assocs., Inc.*, 57 Wn. App. 389, 395, 788 P.2d 580 (1990). "[T]he holding in *Curtis*, that a lien foreclosure action is not a special proceeding within the scope of CR 81, is no longer applicable in light of the 1975 amendments to RCW 60.04.100." *Queen Anne Painting*, at 395. Consistent with *Curtis*, a lienor may file a foreclosure action just prior to the expiration of the 8-month statutory period and serve necessary parties within 90 days after filing without jeopardizing its right to enforce the lien. If, however, the lienor fails to serve any of the necessary parties within 90 days of filing the complaint, the lienor loses its right to enforce the lien. *Kinskie v. Capstin*, 44 Wn. App. 462, 465, 722 P.2d 876 (1986). Thus, commencement of a foreclosure action under RCW 60.04.100 "is merely tentative until the action is perfected by service" on all necessary parties. *Queen Anne Painting*, at 393 (citing *Kinskie*, at 466).

An owner is a "necessary" as opposed to "proper" party under RCW 60.04.100. *Davis v. Bartz,* 65 Wash. 395, 400, 118 P. 334 (1911). *See also* 53 Am. Jur. 2d *Mechanics' Liens* § 361 (1970). Failure to properly serve a necessary party within the statutory period renders the lien foreclosure action *absolutely* void, while failure to serve a proper party within the statutory period renders the action void only against that party. *Davis,* at 400; *Kinskie,* at 466. Since Hedreen was the owner of the property foreclosed upon, he was a necessary party under RCW 60.04.100.

■ ■ The 1975 amendment to 60.04.100 does not expressly indicate how its 90-day tentative commencement provision applies to lienors who are joined in a fore-

closure action. A party joined as a defendant in any type of civil action, including a lien foreclosure, must *serve* his answer, along with any counterclaims or cross claims, within 20 days following service of the summons and complaint. CR 12(a)(1), (b). The general tentative commencement rule, RCW 4.16.170, applies only to the initial complaint. Although a defendant joined in a civil action must comply with CR 12, he may amend his pleadings pursuant to CR 15 after expiration of the 20-day time limit for filing responsive pleadings. The 90-day tentative commencement provision in RCW 60.04.100, however, applies to all lienors, regardless of whether they initiated or were joined in the foreclosure action. Thus, a lienor joined in an action may amend his pleadings to assert a mechanics' lien under RCW 60.04.100 only if the claim is served on all necessary parties within 90 days from the date of his joinder in the action.[4]

In the instant case, it is unclear whether GLY complied with CR 12 since it filed, but apparently did not serve, its responsive pleadings within 20 days of its joinder. GLY filed its answer, counterclaim, and cross claim on Novem-

---

[4]The case of *J.R. Simplot Co. v. Vogt*, 93 Wn.2d 122, 605 P.2d 1267 (1980) is inapposite. In that case the court addressed the issue of whether the codefendant asserting a seed lien pursuant to RCW 60.12.080, now RCW 60.11.130 "had to commence his lien foreclosure by filing an answer, a cross claim or a counterclaim within the statutory period or lose his lien rights, or whether his rights were preserved by the actions of plaintiff in joining him as a party." *Simplot*, at 124. Although the plaintiff did not file its complaint under the provision governing the codefendant's lien, the plaintiff did file a foreclosure action and join the codefendant within the time period under the statute governing the codefendant's seed lien. Based on these facts, the court held that the codefendant's lien did not expire even though he failed to file his answer, counterclaim, or cross claim within the 6-month statutory period. *Simplot*, at 126 (relying on *Curtis Lumber Co. v. Sortor, supra*). The court also relied on the common law rule that a counterclaim that arises out of the same transaction or occurrence and is not barred by the statute of limitation at the commencement of the action in which it is pleaded need not be pleaded within the statutory time limit. *See Simplot*, at 126; *Logan v. North-West Ins. Co.*, 45 Wn. App. 95, 724 P.2d 1059 (1986). The *Simplot* case did not involve a situation in which the codefendant lienor failed to serve necessary parties within 90 days from the date of its joinder.

ber 25, 1987, more than 2 months before GLY received notice of the court's CR 5(c) order dispensing with service between defendants. In any case, the parties do not dispute that GLY failed to serve Hedreen within 90 days from the date of its joinder in the foreclosure action. We therefore conclude that GLY 's lien expired.

GLY contends that its lien claim should be allowed to proceed based on equitable principles even though it failed to comply with the service requirements of RCW 60.04.100, because it would have served Hedreen in a timely manner had it not relied on the trial court's order dispensing with service of pleadings between defendants.[5] Hedreen contends that the order dispensing with service violated RCW 60.04.100. The 90-day tentative commencement provision added to RCW 60.04.100 in 1975 is a special proceeding and requires service on all necessary parties. CR 5(c), which permits the court to abrogate service requirements in cases involving numerous parties, conflicts with the 1975 amendment to RCW 60.04.100. When a general rule of civil procedure conflicts with a rule governing a special proceeding, the general rule of civil procedure does not apply. CR 81(a). The trial court therefore erred in issuing the CR 5(c) order dispensing with service of pleadings between defendants.

We point out that the court erred not only in issuing the CR 5(c) order, but also in executing it. CR 5(c) states that any order abrogating service requirements between defendants "*shall* be served upon the parties". (Italics ours.) The trial court's failure to require service of the order on all parties violated fundamental principles of due process. Had Hedreen been served with a copy of the order, he at least would have known that he must look in the court file to ascertain whether any of the codefendants were asserting claims against him. Furthermore, the

---

[5]Equitable estoppel applies when a party acts to his prejudice because of reasonable and good faith reliance on the assurances of another. *Emrich v. Connell*, 105 Wn.2d 551, 559, 716 P.2d 863 (1986).

court should have ordered that a copy of each pleading filed be mailed to each of the parties.

■ Although GLY cannot be held responsible for the failure to notify Hedreen of the court's CR 5(c) order, GLY should have anticipated that the order was an error and should have served a copy of its pleading on all necessary parties in order to preserve its rights under the statute. As the court stated in *Kinskie*,

> [s]tatutes creating liens are in derogation of common law. "[O]ne claiming the benefits of the lien must show he has complied strictly with the provisions of the law that created it." *Pacific Gamble Robinson Co. v. Chef-Reddy Foods Corp.*, 42 Wn. App. 195, 198, 710 P.2d 804 (1985) [*review denied*, 105 Wn.2d 1008 (1986)].

*Kinskie*, 44 Wn. App. at 464. We therefore reject GLY 's equitable estoppel argument.

■ We next address whether the trial court erred in imposing CR 11 sanctions against Hedreen. An award of CR 11 sanctions is reviewed on appeal for abuse of discretion. *Bryant v. Joseph Tree, Inc.*, 57 Wn. App. 107, 115, 791 P.2d 537, *review granted*, 115 Wn.2d 1027 (1990). The trial court ordered Hedreen to pay GLY attorney's fees in the amount of $3,750 as a CR 11 sanction based on Hedreen's cross claims against GLY alleging negligent construction and breach of warranty. GLY moved for CR 11 sanctions on two separate grounds. First, it claimed that Hedreen's cross claims "were not grounded in fact and . . . not warranted by existing law nor a good faith argument for extension of the same". *See* CR 11. Second, it claimed that Hedreen "made representations to the court in a motion pleading that were completely unsupported factually."

■ In *Stuart v. Coldwell Banker Comm'l Group, Inc.*, 109 Wn.2d 406, 745 P.2d 1284 (1987), the court declined to recognize a cause of action for negligent construction and reiterated that

> Beyond the terms expressed in the contract of sale, the only recognized duty owing from a builder-vendor of a newly com-

pleted residence to its first purchaser is that embodied in the implied warranty of habitability, which arises from the sale transaction. *House v. Thornton*, [76 Wn.2d 428, 436, 457 P.2d 199 (1969)].

*Stuart*, at 417. The court distinguished between "economic loss" and "physical harm or property damage", thus:

> Defects of quality are evidenced by internal deterioration, and designated as economic loss, while loss stemming from defects that cause accidents involving violence or collision with external objects is treated as physical injury.

*Stuart*, at 420. The court indicated that while a cause of action in tort may exist for physical or property damage, no action existed for economic loss. *Stuart*, at 420. Hedreen did not demonstrate that the alleged defects "endanger[ed] the safety and health of the public" to the extent that "the safety-insurance policy of tort law" should apply. *Stuart*, at 420, 421.

We thus conclude that Hedreen's cross claims for negligent construction and breach of warranty were not "warranted by existing law". *See* CR 11. Hedreen's assertion of a claim of negligent construction, however, can be construed as a "good faith argument" for changing the law, especially in light of the dissenting opinion. *Stuart*, at 422 (Callow, J., dissenting) (Justice Dore concurred with Justice Callow.). Nevertheless, we affirm the trial court's award of CR 11 sanctions based on the factual assertion by Hedreen that the structure of Jefferson Square was unsafe. Because the assertion directly conflicted with the testimony of Hedreen's expert witness, the trial court did not abuse its discretion in concluding that the assertion was not "grounded in fact".[6] *See* CR 11.

▮ We next consider whether GLY failed to give Hedreen preclaim notice pursuant to RCW 60.04.020 and whether the trial court therefore abused its discretion in

---

[6] Hedreen attempts to avoid this basis for the judgment by erroneously stating that the sanctions "were imposed simply for the reason that in the lower court's opinion there was no legal basis for Hedreen to have asserted these defenses".

granting summary judgment in favor of GLY. Preclaim notice to the owner of the property on which materials are used is a prerequisite to enforcing a materialmen's lien. RCW 60.04.020. No preclaim notice is required, however, if the claim is solely for labor. *Whitney v. McKay*, 54 Wn.2d 672, 681, 344 P.2d 497 (1959). GLY 's arbitration award against Parkside did not segregate the amount of the award attributable to labor from the amount of the award attributable to materials. The trial court nevertheless construed the entire award as labor because it found that Parkside owed GLY more than the arbitration award amount of $836,000 in unpaid labor costs. The declaration submitted by GLY 's CPA states:

> GLY's costs incurred after August 31, 1986 were composed of 20.3% labor and 79.7% materials. The partial payments made by Parkside and Mr. Hedreen after August 31, 1986 have, accordingly, been attributed 20.3% to labor and 79.7 to materials. This results in unpaid GLY labor (including taxes and benefits) of $643,953.00.

> In addition to GLY's own labor force, GLY paid $231,360.00 for subcontractor direct labor which was also never paid by Parkside and Mr. Hedreen. This is broken down as follows:

| | |
|---|---|
| Penn Concrete | $6,859.00 |
| Steelform Contracting | 171,500.00 |
| Tricon International | 3,500.00 |
| Pacific Erectors | 49,500.00 |
| Subcontractor Total | $231,360.00 |

The trial court relied on the declaration in construing the entire award as labor.

We reject Hedreen's assertion that GLY did not meet its burden of proving segregation between labor and materials and hold that GLY 's payment of labor costs for other subcontractors to whom Parkside was liable was a valid basis for treating the entire award as labor. In light of our holding that the trial court did not err in treating the entire award as for labor, we need not consider Hedreen's claim that GLY failed to give Hedreen preclaim notice under RCW 60.04.020.

We next consider whether the trial court erred in enforcing GLY 's $75,000 attorney fee award against Park-

side through GLY's lien action against Hedreen's property. Hedreen claims that in the instant foreclosure action, the trial court's award of attorney's fees is limited to those fees incurred in the foreclosure action. *See* RCW 60.04-.130. GLY contends that the award is enforceable pursuant to RCW 60.04.110. That section provides that a "contractor shall be entitled to recover upon the claim filed by him only such amount as may be due him *according to the terms of his contract*". (Italics ours.) The Court of Appeals has indicated that "a contractor's lien may be distinct from a laborer's and materialman's lien because it is valued 'according to the terms of [the] contract'." *CSR Contractors, Inc. v. Kendall Constr., Ltd.*, 45 Wn. App. 648, 651 n.1, 726 P.2d 1018 (1986) (quoting RCW 60.04.110). The trial court did not err in permitting GLY to enforce its award of attorney's fees pursuant to the contract between Parkside and GLY through its lien action.[7]

We next address whether the trial court incorrectly calculated the amount of GLY's prejudgment interest. Hedreen contends the court erroneously calculated interest from the date of the arbitration award rather than from the date the lien was recorded. GLY's lien was recorded on May 27, 1987, and the court awarded prejudgment interest from May 1, 1987. Washington courts have held that in foreclosure actions, interest runs from the date of filing notice of the lien. *Rosellini v. Banchero*, 83 Wn.2d 268, 274, 517 P.2d 955 (1974); *Brower Co. v. Noise Control of Seattle, Inc.*, 66 Wn.2d 204, 209-10, 401 P.2d 860 (1965).

In the instant case, GLY contends that the additional interest was due pursuant to the contract between GLY and Parkside and that it is recoverable pursuant to RCW 60.04.110. We agree that the award of prejudgment

---

[7]GLY argues in the alternative that Hedreen is equitably estopped from claiming that the $75,000 is recoverable under the lien statute, because Hedreen argued previously when GLY tried to pierce Parkside's corporate veil that corporate disregard was an unnecessary remedy since GLY had its mechanics' lien. We need not reach this issue.

interest under the terms of the contract between Parkside and GLY is enforceable in the lien action pursuant to RCW 60.04.110. We also note that Hedreen has failed to demonstrate that the interest was not awarded pursuant to contract. We thus decline to overturn the additional prejudgment interest awarded from the date of the arbitration.[8]

We now turn to Hedreen's assignments of error pertaining to Expert Drywall. We first address whether the trial court erred in dismissing Hedreen's cross claim against Drywall for defective performance. Hedreen asserts that, as owner of the building, he should have been permitted to submit evidence of Drywall's alleged defective performance as an "equitable defense" to Drywall's lien claim, regardless of the lack of contractual privity. Hedreen provides no legal authority, however, to support his assertion. *See Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 46, 785 P.2d 815 (1990). Instead, Hedreen asserts that Drywall conceded contractual privity with Hedreen when it alleged that it performed extra work "at the request and personal knowledge of R.C. Hedreen". He also asserts that the trial to determine the amount of Drywall's lien amounted to a personal judgment against him based on the court's interpretation of Drywall's contract with Parkside.

Drywall alleged that Hedreen personally requested the extra work items in order to demonstrate that Hedreen received actual notice under the preclaim notice statute, RCW 60.04.020. Hedreen's authority to request the "extra work" items, however, stemmed from his relationship with Parkside and the contract between Parkside and Drywall. This conclusion is consistent with the trial court's ruling that Parkside's creditors could not pierce Parkside's corporate veil to hold Hedreen liable for Parkside's debts.

Furthermore, the trial court's findings of fact and conclusions of law do not indicate that Drywall either sought

---

[8]We need not reach GLY's equitable estoppel argument.

or obtained a judgment on the contract between Parkside and Drywall. The trial court, for the sole purpose of enforcing Drywall's in rem action against Hedreen's property, determined the value of the extra work items based on the negotiations which had taken place between Hedreen and Drywall after Parkside had become bankrupt. The court's determination that Hedreen engaged in the negotiations as the owner of the property to prevent an additional lien on his leasehold interest did not constitute a litigation of the contract claims between Drywall and Parkside.[9] The court dismissed Hedreen's defective performance claims because Parkside's bankruptcy trustee had control of all of Parkside's assets, "including any claims that it might have against subcontractors for defective work", and never asserted any claim against Drywall for defective work. The trial court did not err in basing the amount of Drywall's lien on the agreed value of labor, equipment, and materials supplied by Drywall for the extra items, while dismissing Hedreen's cross claims for defective performance.

Because we hold that Hedreen was not entitled to assert breach of contract claims against Drywall, we need not consider Hedreen's claim that the trial court erred in determining the amount of his offset against Drywall. The trial court awarded an offset against Drywall's lien based on RCW 60.04.020, which provides that a materialmen's lien is not enforceable unless the owner of the property received timely notice of the "materials or supplies or equipment used in construction". The offset was not based on Hedreen's allegation that Drywall breached its contract.

Finally, we address whether any of the parties are entitled to an attorney's fee for the cost of the appeal. RCW

---

[9]Finding of fact 16 states: "Mr. Hedreen, through Mr. Quinn, negotiated with Expert to prevent additional liens on his leasehold interests. There was little or no benefit to Parkside in negotiating the extra work items. All the benefits went to Mr. Hedreen, as owner."

Conclusion of law 2 states: "In negotiating the compromise agreement with [Drywall], Mr. Hedreen was acting· on behalf of himself as owner and not on behalf of Parkside."

174

60.04.130 provides that the superior court, Court of Appeals, or Supreme Court "may allow to the prevailing party in the action, whether plaintiff or defendant, as part of the costs of the action, . . . a reasonable attorney's fee". *See Irwin Concrete, Inc. v. Sun Coast Properties, Inc.*, 33 Wn. App. 190, 200-01, 653 P.2d 1331 (1982). In the instant case, Hedreen has prevailed only on the issue of whether GLY 's lien was void. The majority of Hedreen's remaining arguments had little merit. We therefore decline to award an attorney's fee to either Hedreen or GLY, but conclude that Drywall is entitled to a reasonable attorney's fee pursuant to RCW 60.04.130.

The Superior Court's ruling that GLY complied with the service requirements of RCW 60.04.100 is reversed. GLY's lien is therefore void. We affirm the trial court's award of CR 11 sanctions against Hedreen, the summary judgment in favor of GLY construing the arbitration award as labor, and the award of attorney's fees and prejudgment interest pursuant to the contract between Parkside and GLY. We also affirm the trial court's dismissal of Hedreen's cross claim against Drywall for defective performance.

SCHOLFIELD and AGID, JJ., concur.

Reconsideration denied September 4, 1991.

Review denied at 118 Wn.2d 1015 (1992).