[No. 10437.  *En Banc.*  May 7, 1913.]

FRED N. HALLETT et al., *Respondents*, v. H. J. PHILLIPS et al, *Appellants*.[1]

MECHANICS' LIENS — DUPLICATE STATEMENTS — MATERIALS FURNISHED BY SUBCONTRACTORS. Subcontractors furnishing material and doing work in the construction of a building must, as a condition precedent to the right to a lien, deliver or mail to the owner duplicate statements of the materials at the time they are furnished, as required by Rem. & Bal. Code, § 1133, of "every person" furnishing materials at the "time they are delivered to any person or contractor;" and it is not sufficient to mail one statement after the completion of the work.

SAME — ENFORCEMENT — DEFECTIVE NOTICES. Where there was no evidence to show what proportion of a lien was for labor, the entire lien for labor and material must fail where the necessary notice of the material was not given.

[1]Reported in 132 Pac. 51.

APPEAL—REVIEW—FINDINGS. Findings on conflicting evidence, by a trial judge who heard the witnesses, will not be disturbed if supported by the evidence.

MECHANICS' LIENS — ENFORCEMENT — PERSONAL JUDGMENT. Upon failing to establish a mechanics' lien, it is proper to enter a personal judgment against the owner in favor of one who was properly brought into the action at the instance of the owner, and to whom the owner was personally liable for materials purchased.

Appeal from a judgment of the superior court for King county, John S. Jurey, Esq., judge *pro tempore*, entered November 4, 1911, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in consolidated actions to foreclose mechanics' liens. Affirmed in part and reversed in part.

*Kerr & McCord*, for appellants Phillips.

*S. A. Keenan*, for respondent Hallett.

*Walter L. Johnstone*, for respondent Brace & Hergert Mill Company.

*John P. Hartman*, for respondent Seidelhuber.

*Josiah Thomas* and *D. R. Hoppe*, for respondents Finlay & Robb.

*Kenneth Mackintosh*, for respondent Union Hardware Company.

*John E. Ryan* and *Grover E. Desmond*, for respondent Globe Wall Paper Company.

CROW, C. J.—Three separate actions, consolidated prior to trial, were instituted in the superior court of King county against H. J. Phillips, Mary Pickering Phillips, his wife, and others, to foreclose liens for labor and material on real estate owned by Phillips and wife. Cross-complaints were filed by certain defendants, and complaints in intervention were filed by certain interveners to foreclose separate liens asserted by them. Upon findings made, a final decree was entered, foreclosing separate liens in favor of Fred N. Hallett, Frank J. Seidelhuber, Brace & Hergert Mill Company, a corporation,

Union Hardware Company, a corporation, and A. J. Finlay and J. N. Robb, copartners as Finlay & Robb. In the same decree a personal judgment was entered in favor of Globe Wall Paper Company, a corporation, against H. J. Phillips and wife, for leatherette sold. From this decree, Phillips and wife have appealed.

On February 14, 1910, H. J. Phillips and wife, as owners of a lot in the city of Seattle, entered into a written contract with the defendant O. E. Olson for the erection of an apartment house thereon. The contract provided that Olson was to furnish all labor and material, and was to be paid $29,407 as the contract price. The various claimants herein allege that they furnished material or labor, or material and labor, to Olson which were used in the construction of the building, and claim that they perfected liens for the respective amounts due them.

Relative to the claim of Frank J. Seidelhuber, one of the original plaintiffs, the trial court found that, on or about April 25, 1910, the contractor Olson entered into an oral agreement with him, whereby Seidelhuber agreed to furnish material and perform work in the construction of stair railings, two pipe railings, and a fire escape ladder in and upon the building, for the agreed price of $163; that in pursuance thereof, Seidelhuber performed the work and constructed in the building the stair railings, pipe railings and fire escape ladder as agreed; that no part of the contract price therefor has been paid; that he ceased to perform labor and furnish material on July 30, 1910; and thereafter mailed a duplicate statement of his claim to H. J. Phillips and wife in care of their agents, and that within ninety days after the completion of his contract, he perfected and filed his notice of lien. A foreclosure decree was entered in his favor for $163, with interest, attorney's fees and costs.

Relative to the claim of Finlay & Robb, interveners, the trial court found that, on or about April 28, 1910, they en-

tered into a contract with Olson, in the form of an accepted written bid, as follows:

"O. E. Olson, City.

"Dear Sir: For the sum of eleven hundred and sixty-seven ($1167.00) dollars, we agree to do the sheet metal work and roofing on the building under course of construction on Terry avenue near Pine street. This work includes:

> Four ply tar and gravel roof,
> All the galvanized iron cornices,
> Galvanized capitals on pilasters,
> All fire proof doors and windows as specified,
> Gas vents,
> Skylight,
> Window flashings,
> Base flashing,
> Balcony roof and flashing,
> Three inch bed vents for the entire building.

"Should you desire the eight galvanized vents from outside to light shaft they would cost you an additional sixty-four ($64.00) dollars. Trusting this figure may be favorable and we may be awarded the contract, we are, yours truly,

"Finlay & Robb, Per J. N. R.

"I hereby accept above bid for metal work only.

"(Signed)   O. E. Olson;"

That the contract price was $940; that on or about May 2, 1910, the interveners furnished material and performed the work; that they performed extra labor and furnished extra material at the request of Olson of the value of $128.25; that they completed their contract on August 23, 1910; that on November 9, 1910, they perfected and filed their notice of lien; and that after crediting all payments made, there still remained due them $1,000.10, for which sum a decree of foreclosure was entered, with interest, attorney's fees and costs.

The evidence shows that the claimant Frank J. Seidelhuber did not mail to the owner of the building or his agent any duplicate statements of materials furnished by him until he had completed his contract, and there is no evidence showing that any duplicate statements for materials furnished

by Finlay & Robb were delivered or mailed to the owners or their agents at any time.

The question presented on the appeal from the decree of foreclosure on these claims is whether, being subcontractors who furnished material as well as labor, the respondents Seidelhuber and Finlay & Robb, under Rem. & Bal. Code, § 1133, were required to mail duplicate statements of the material furnished by them. They contended, and the trial court must have held, that, being subcontractors, they were not materialmen, and were not required to deliver or mail any statements. In support of this position, respondents cite *Architectural Decorating Co. v. Nicklason*, 66 Wash. 198, 119 Pac. 177, decided by department two of this court on December 8, 1911; while appellants, in support of a contrary contention, that the mailing of duplicate statements was necessary to sustain the liens, cite *Heim v. Elliott*, 66 Wash. 361, 119 Pac. 826, decided by department one of this court on December 26, 1911. A casual reading of the cases cited might suggest that they lack in harmony and are conflicting, yet we are satisfied that a correct judgment was rendered in each case. The statute provides:

"Every person furnishing material or supplies to be used in the construction, alteration or repair of any mining claim, building, wharf, steamer, vessel, boat, bridge, ditch, dyke, flume, tunnel, well, fence, machinery, railroad, street-railway, wagon road, aqueduct to create hydraulic power, or any other building or any other structure or mining claim or stone quarry, shall, at the time such material or supplies are delivered to any person or contractor, deliver or mail to the owner, or reputed owner, of the property, on, upon or about which said materials or supplies are to be used, a duplicate statement of all such materials or supplies delivered to any contractor or person to whom any such materials or supplies have been sold or delivered, and no materialmen's lien shall be filed or enforced unless the provisions of this act have been complied with." Rem. & Bal. Code, § 1133.

This statute is intended to provide a method of protection for owners of buildings as against claims for materials

which may have been purchased by contractors from third parties without the owners' knowledge, there being no privity of contract between the owners and such third parties. To afford this protection the statute, as a condition precedent to the right to claim a lien, requires that "every person" furnishing material shall deliver or mail the duplicate statements. In this case, the contract with Olson provides that payments shall be made to him by appellants on each alternate Saturday, upon the architect's estimate, and that the amount of payments shall be eighty per cent of the labor and material placed in the building at the time of the payment. This stipulation, common to building contracts, that the architect's estimate and the payments shall be based upon material and labor actually in the building, suggests the necessity of protection to the owner against unpaid claims for material which the contractor may then owe. An owner may see and note all persons performing labor at and on the building, but without some statement or notice, he would not know what persons were furnishing materials and supplies, or whether they had been paid by the contractor. Without any protection against claims for materials, he would be subjected to the constant hazard of making payments to his contractor, and later to some third party who had furnished materials for the building. One and the same person can furnish labor and material, and may do so as a subcontractor. The fact that he performs labor will not relieve him from the necessity of mailing duplicate statements for material which he may furnish, if he intends to claim a lien therefor. There is no substantial conflict between the cases cited. In *Architectural Decorating Co. v. Nicklason, supra,* we held the appellant corporation was not a materialman, but that it had contracted with the authorized agent of the owner to do decorative plaster work, supplying both labor and material. The record was brief, consisting of the findings of fact, conclusions of law, and decree. The findings recited that the appellant had entered into a contract with the owner. The

findings did not state that the appellant was a subcontractor; nor did they show that the owner's agent, with whom the appellant contracted, was the principal contractor, and therefore a statutory agent. The plain inference from the findings was that the contract for decorative work was made by appellant directly with the owner. The case was decided upon the theory that, as the labor and material were supplied directly to the owner, it was not necessary for the claimant to mail any duplicate statements. In making the statement that the appellant was not a "materialman," this court meant that it was not a materialman in contemplation of the statute; that it was not a third party between whom and the owner no privity of contract existed, but that it was a materialman furnishing material directly to the owner. That such is the plain meaning of our opinion is apparent from the language there used, in which we said:

"Its contract was direct with the owner through the owner's agent. The statute covers a situation where three persons are involved, the one who furnished material, the one to whom the material is furnished, and the owner of the building for which they are furnished. The owner has no contractual relation with the first person, and has no means of knowing what materials may be furnished to the second person upon the faith and credit of the building, except as he receives notice through his duplicate bills. Upon receipt of these, the owner is in a position to protect himself against his contractor and the materialman, by checking up the contractor and the materials claimed to be furnished. This is the plain purpose of the statute. Where the owner contracts directly for material, he requires no notice outside of his contract, to protect himself. The findings make appellant a contractor and not a materialman, *dealing with the owner*. The contract was of itself a statement of the materials furnished, and none other was necessary."

In the *Heim* case, the claimants Wilkinson and Heim were both subcontractors. Their contention was that, as such subcontractors, they were not required to deliver or mail to the

owner duplicate statements of the materials furnished. In passing upon this contention we said:

"The respondents Wilkinson and Heim contend that they are subcontractors, and that they were not required to deliver or mail to the owner a duplicate statement of the material which they furnished. This contention is not tenable. Our statute, Rem. & Bal. Code, § 1133, provides that 'every person' furnishing material to be used in the construction of a building 'shall at the time' the material is delivered, deliver or mail to the owner of the property upon which the material is to be used a duplicate statement of all material delivered, etc. It seems clear, therefore, that the respondents having failed to deliver the duplicate statements, cannot be allowed a lien for the material which they furnished."

To this construction of the statute, we now adhere. Seidelhuber and Finlay & Robb were required to deliver or mail to appellants statements of materials which they had furnished, as a condition precedent to their right to maintain liens. The mailing of a single statement by respondent Seidelhuber, after he had completed his contract, did not satisfy the requirement of the statute. *Finlay v. Tagholm*, 62 Wash. 341, 113 Pac. 1083.

There is no evidence produced in this case such as was produced in *Heim v. Elliott, supra*, showing what proportion of respondents' claims was for material and what proportion was for labor. This being true, it is impossible to fix or award any amount for which they can now maintain labor liens. Having failed to comply with the statute requiring them to mail duplicate statements to appellants, they cannot maintain liens for materials furnished. It therefore follows that as to respondents Seidelhuber and Finlay & Robb the judgment must be reversed and that their claims must be dismissed.

As to the respondent Brace & Hergert Mill Company, a corporation, and Union Hardware Company, a corporation, the only question is whether, as materialmen, they mailed to appellants or their authorized agents the duplicate statements

of materials sold, as required by the statute. Upon this issue the evidence was conflicting, and the trial judge, who saw the witnesses, heard them testify, passed upon their credibility and weighed their evidence, found in favor of respondents. There is evidence to .sustain his finding, and it will not be disturbed. The decree as to respondents Brace & Hergert Mill Company and Union Hardware Company is affirmed.

As to respondent Fred J. Hallett, who performed labor only, the controlling question is whether his notice of lien was filed within the ninety days required by statute. Upon this question the evidence was also conflicting. The trial court resolved the issue in Hallett's favor, and the decree as to him will be affirmed.

The contract with Olson stipulated that certain walls of the building were to be decorated with paper called leatherette, to be selected by appellants as owners. The leatherette used was sold by respondent Globe Wall Paper Company, and it claims the sale was made directly to appellants; while appellants insist the leatherette although selected by them, was in fact sold to Mr. Olson. Respondent, having filed a notice and claim of lien, was brought into the consolidated actions at appellant's instance, or at least with their consent, as they desired to quiet their title against the lien claimed. On the trial, respondent, conceding that its notice was not filed in time, abandoned its claim for lien, but insisted upon a judgment against appellants for the value of the leatherette. The trial judge found that the sale had been made directly to appellants, and not to Olson, and entered a personal judgment against them for respondent's claim. Appellants now contend that it was error to enter a personal judgment against them in this action in favor of respondent, it having failed to sustain its alleged lien. This contention cannot be sustained. Respondent was a proper party to this consolidated action for the purpose of having its asserted lien determined and adjudicated. Being a party, it was entitled to have all

of its rights adjudicated, and if the evidence justified it, recover a personal judgment against appellants after its claim for lien had been held invalid. *Pacific Iron & Steel Works v. Goerig,* 55 Wash. 149, 104 Pac. 151; *Dolan v. Cain,* 59 Wash. 259, 109 Pac. 1009.

On the question whether the sale was made by respondent to Olson or to appellants, the evidence is conflicting. That produced on behalf of respondent shows that appellant H. J. Phillips, one Hall, his agent, and an employee of Olson, called at respondent's place of business, where appellant H. J. Phillips selected and ordered the leatherette; that respondent sold directly to Phillips, and charged the account to him upon its books. This evidence, although disputed by appellants' witnesses, sustains the finding of the trial judge, which cannot be disturbed.

The judgment as to respondents Frank J. Seidelhuber and Finlay & Robb is reversed, and their claims are dismissed. As to all other respondents the judgment is affirmed. Appellants will recover costs in this court against respondents Seidelhuber and Finlay & Robb. The other respondents will recover costs in this court against appellants.

MOUNT, CHADWICK, MORRIS, PARKER, MAIN, ELLIS, and FULLERTON, JJ., concur.