[No. 20953.   Department One.   April 12, 1928.]

ROBINSON TILE & MARBLE COMPANY, *Respondent*, v.
S. MAIMON SAMUELS *et al.*, *Appellants*, CHARLES
A. JOHNSON *et al.*, *Respondents.*[1]

[1] MECHANICS' LIENS (40-1) — NOTICE OF INTENTION TO CLAIM —
NECESSITY. Under Rem. Comp. Stat., § 1133, notice must be given
to the owner of intention to claim a lien for materials fur-
nished to a subcontractor, in order to claim a lien.

[2] SAME (40-1) — WAIVER OF NOTICE — ESTOPPEL. Notice to the
owner of intention to claim a lien for materials, required within
five days after delivery by Rem. Comp. Stat., § 1133, is waived,
and the owner is estopped to claim want of notice, where, at
the time of delivery of the materials, the owner was present
and arranged for payment, and the materialman relied thereon.

[3] EVIDENCE (154)—PAROL EVIDENCE—TO VARY WRITING—MATTERS
NOT INCLUDED IN WRITING—INCOMPLETE CONTRACT. A written
contract for the construction of a building, previously agreed
upon orally to be substantially similar to another building con-
structed for the owner, is incomplete and therefore does not
exclude oral evidence as to the terms, where the plans and
specifications were not made until sometime later, and the con-
tractor immediately notified the owner that they were ma-
terially different from the building, whereupon the parties en-
tered into an oral agreement under which the building was com-
pleted.

Appeal from a judgment of the superior court for
King county, Frater, J., entered July 1, 1927, upon
findings in favor of the contractor and materialman, in
an action to foreclose liens under a building contract.
Affirmed in part and reversed in part.

*John F. Dore, F. C. Reagan* and *T. M. Royce,* for ap-
pellants.

*Herr, Bayley, Croson & Innis* and *F. Bartow Fite,
Jr.,* for respondent Johnson.

*Lund & Dodds,* for respondent Washington Brick,
Lime & Sewer Pipe Co.

[1]Reported in 266 Pac. 701.

MACKINTOSH, C. J.—This litigation arises out of the construction of a store building for the appellant Samuels by the respondent Johnson.

Error is assigned upon the allowance of liens in favor of four materialmen and the lien of the contractor.

[1] (1) The lien allowed to the Van Doren Roofing & Cornice Co. is objected to for the reason that that company was a subcontractor and furnished materials, but sent no notice to the appellant of an intention to claim a lien. In order for a lien to be claimed for materials furnished, such a notice must be given the owner. Rem. Comp. Stat., § 1133 [P. C. § 9706]; *Heim v. Elliott,* 66 Wash. 361, 119 Pac. 826; *Hallett v. Phillips,* 73 Wash. 457, 132 Pac. 51; *Culbert v. Lindvall,* 73 Wash. 643, 132 Pac. 729.

This being the rule of law, this lien was improperly allowed and the judgment in favor of this company must be reversed.

(2) The appeal from the allowance of a lien to W. F. Jahn & Co. for the furnishing of materials is by stipulation in this case waived and the judgment affirmed.

(3) The same situation applies as to the lien of Eckart Bros., Inc.

[2] (4) The lien allowed the Washington Brick, Lime & Sewer Pipe Co. is complained of for the reason that this company, furnishing materials, failed within the five-day period set by the statute to give notice to the owner of the fact that it was furnishing materials and would claim a lien. The trial court found as a fact that, at the time these materials were delivered, a representative of the company and the appellant Samuels were present and the matter of the payment for the materials was discussed; that Samuels then stated that

an estimate would be allowed and payment made to the contractor of a sufficient amount with which the contractor would pay for the materials; that relying on that statement and representation, the company did not, within the five-day period after delivery, send to Samuels a notice in writing that it had commenced delivering materials and that it intended to claim a lien therefor.

A review of the testimony shows that it does not preponderate against this finding of the trial court, and the only question then remaining is whether the appellant has waived the requirement of a notice. This court, in *Hays v. Montesano Mill Co.*, 85 Wash. 604, 148 Pac. 881, stated that the notice in these matters is intended for the protection of the owner; and the evidence in the instant case showing that the owner led the material furnisher into a position where it failed to give the statutory notice, the owner is now estopped from claiming that a notice was necessary after the other party, influenced by and relying upon his conduct, has changed its position to its injury. The appellant, having both waived and being estopped, can not now dispute the right of this material furnisher to its lien and judgment; which is therefore affirmed.

[3] (5) The last lien objected to is that of the respondent contractor, Johnson, and involves the examination of the statement of facts to determine whether the building was constructed under what is claimed by the appellant to be a written contract, or was actually constructed under a parol agreement contended for by the respondent.

The written contract in question, signed by both parties, is dated July 16, 1926; the specifications, also signed by both parties, are dated July 17, 1926; and the drawings have on them two dates, July 24 and July

29, unmistakably showing that, in no event, were they completed earlier than July 24. These instruments comprise the written contract relied on by the appellant, and in support of it argument is made that it cannot be contradicted by parol evidence.

Among other facts the trial court found the following:

The respondent contractor had, in 1925, built for the appellant owner, Samuels, a store building at the corner of Madison street and Boren avenue in Seattle at a final cost of $17,400. (It also appears that later he built a second store building at Seventh and McGraw). Then, at Broadway and John street, on a lot practically the same size as the one on which the first building had been erected, but with a somewhat rounded corner, the store building here in question was constructed. The original verbal agreement of the parties was that, for $17,000, the respondent should erect this structure at Broadway and John street substantially like the one that had been built at Madison street and Boren avenue, but omitting a marquise and using only about one-half the amount of terra cotta—this to allow the contractor a fair margin of profit on the building at Broadway and John street which he had not been able to make on the first building.

On or about July 7, 1926, the respondent began to tear down the frame structure then occupying the property upon which the store building was to be erected, and on July 16 the parties signed the written agreement already referred to for the performance of the work. When, about a week later, the drawings were completed by the appellant's architect and were shown to the respondent, he examined them and found that they were more elaborate than those contemplated and agreed upon verbally, and he immediately informed

the appellant that they were for the erection of a different, larger and more expensive structure than the one he had erected at Madison street and Boren avenue. The appellant then induced him to proceed with the work and to complete the performance of the contract in accordance with the changes indicated on the drawings, and agreed to indemnify him against any loss by reason of the more expensive structure. This is the parol agreement relied on by the respondent.

Testimony of the men who had done the work and furnished the material in the construction of the building showed that, while the cost of materials and labor was practically the same when each building was erected, the various items of work and material were, in each instance, greater in the case of the building here in question than in the first building; the obvious inference being that this was by reason of the changed contract.

There had been no basement in the first building, but the appellant wanted one in the building at Broadway and John street, and because hardpan was encountered, it made an increase in the cost of excavation for the basement and for sewer construction. The respondent testified that he had told the appellant before commencing work that, if he struck hardpan, it would mean work that would have to be taken care of as an extra, and the architect admitted in his testimony that the ground on which the building was erected was in fact hardpan.

If, at the time it was executed, the contract had been complete as to all of the instruments that formed it, there could be no question as to its being a written contract and not to be changed by parol evidence except by a showing of fraud or mistake. But, as has been said, the drawings were finished a week or more

after the written agreement and the specifications had been signed, and when the respondent examined the drawings, he at once declared that the building could not be constructed for $17,000 according to those plans, and the appellant and the respondent then entered into the oral agreement under which the work was finally completed.

When it is considered—that ordinarily a contractor intending to submit a bid to do certain work is furnished in advance with a set of plans and specifications covering that work so that he may make his estimate; that the respondent contractor here had in mind, when he offered to do the work for $17,000, the same plans (with some more or less minor changes) from which he had constructed the first store building; that it is incontrovertible that the drawings or plans here were not shown to the contractor until at least a week after the execution of the written contract, and that, in such a situation, a contractor, if it be held that the plans form a part of his contract, would be absolutely at the mercy of the owner and the owner's architect and would have to follow any plans thus furnished him, no matter how much more costly and elaborate; and that, if the contractor here agreed to perform, for $17,000, the work that he finally did, he must have underestimated the cost of the work by about $9,000 (a thing hardly to be seriously thought of under the facts here) —if these things be true and the facts be as the trial court found, then the conclusion must irresistibly be in favor of the respondent's version of the case.

The statement of facts is long, and the testimony is about as conflicting as it could be. An examination of it has failed to convince us that the findings of the trial court are not supported by the weight of the evidence, and we are therefore unable to disturb them.

For this reason the judgment as to the respondent Johnson must be, and it is, affirmed.

TOLMAN, PARKER, MITCHELL, and FRENCH, JJ., concur.