**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Filed
Washington State
Court of Appeals
Division Two

December 6, 2022

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| VELAZQUEZ FRAMING, LLC, | No.  56513-7-II |
| Appellant, | |
| v. | PUBLISHED OPINION |
| CASCADIA HOMES, INC., | |
| Respondent. | |

PRICE, J. — Velazquez Framing LLC filed a complaint to enforce its lien against Cascadia Homes Inc. for labor and materials provided as a second-tier subcontractor.  The superior court granted summary judgment to Cascadia, deciding that Velazquez Framing's failure to provide a prelien notice to Cascadia under chapter 60.04 RCW prevented enforcement of its lien.  Velazquez Framing appeals.  We affirm.

## FACTS

### I.  THE LAKEWOOD HOME CONSTRUCTION

Cascadia is a general contracting company.  In early 2019, Cascadia began preparations to build a house on property it owned in Lakewood, Washington.  In April, High End Construction LLC, a subcontracting framing company, submitted a framing bid for the Lakewood home.

High End began work on the Lakewood home in late September.  High End later orally agreed with Velazquez Framing, another subcontracting framing company, to provide the framing

No. 56513-7-II

for the Lakewood home.[1] Cascadia was unaware High End hired Velazquez Framing to work on

the Lakewood home.[2]

---

[1] The actual amount High End agreed to pay Velazquez Framing is unclear. High End asserts it agreed to pay Velazquez Framing $12,000 for the framing while Velazquez Framing asserts the agreed amount was $22,000.

[2] Cascadia's briefing on this point is troubling. We draw attention to Cascadia's statement of the case at pages 11-12 of its brief. Despite the focus of this appeal on statutory interpretation, Cascadia chose to include facts about the job site, describing garbage left at the job site and suggesting the work was shoddy. Cascadia continued as follows:

> Mr. Eli Herrera is the owner of High End Construction, LLC and is a Hispanic man. Based on Mr. Hecker's observations of High End Construction, LLC's framing work on other homes prior to the [Lakewood home], High End Construction, LLC's employees were predominately, if not exclusively, Hispanic men. Apparently, High End Construction, LLC was having difficulties keeping up with its workload in the fall of 2019. Unbeknownst to Cascadia Homes, High End Construction, LLC contracted with another subcontracting company, Velazquez Framing, to perform framing on the [Lakewood home]. Mr. Hecker did not know individual members of High End Construction's framing crew, and thus, Cascadia Homes had no way of knowing that the Hispanic men who were performing framing work on the [Lakewood home] were actually employed by Velazquez Framing, rather than High End Construction, LLC with which Cascadia Homes had contracted.

Resp't Opening Br. at 11-12 (footnotes omitted). At oral argument, when pressed on the purpose of specifying for the court the assumed ethnicity of the framers, Cascadia's response was essentially that the crews presented no visibly distinguishing factors. In other words, because the framers appeared Hispanic to its agent, they all looked alike.

If the point was that Cascadia's agent did not know which crew, Velazquez Framing's or High End's, was framing the structure, this point could have been made by simply stating "he did not know either crew, so did not know which company was present at the site." (As discussed below, Cascadia's lack of familiarity with individuals on each crew was potentially relevant to whether prelien notice would serve any of the purposes underlying the prelien notice statutes.)

But calling out their assumed ethnicity added nothing to the legal discussion before the court; instead, when combined with other irrelevant facts, such as a complaint about garbage at the construction site, along with suggestions of shoddy work, it presents as a cynical attempt to paint

No. 56513-7-II

Velazquez Framing worked on the Lakewood home between October 15 and November 1, 2019. High End invoiced Cascadia and was paid for its work in October and November. Velazquez Framing sought payment from High End, but was never paid.

Velazquez Framing provided Cascadia with an invoice in late October of that year and called Cascadia a few months later seeking payment for its work on the Lakewood home.[3] Cascadia did not pay Velazquez Framing.

---

the crew members first in a bad light, and then suggests that they are somehow indiscernible from one another, presumably in a way that white workers would not be.

The crew members' assumed ethnicity could only be relevant if we share Cascadia's view—that all Hispanic people look alike and, therefore, Cascadia's agent could not know there was a different crew at the site. We refuse to take the first step with Cascadia. That series of assumptions strips the workers of their individuality and humanity and is anathema to what we endeavor to be as a court. Cascadia will also be well-served by researching the term "Hispanic." While disfavored by some, a little research would have shown that the term does not even make the intended point because "Hispanic" can mean a rich and vast group comprised of people with varying levels of melanin in their skin, varied eye color, hair texture, features, cultures, beliefs, attitudes, dialects, languages, and from all walks of life around the globe.

We cannot condone the use of these types of arguments in our proceedings, even those put forth out of ignorance or lack of awareness. *See State v. Monday*, 171 Wn.2d 667, 678, 257 P.3d 551 (2011) ("Not all appeals to racial prejudice are blatant. . . . [J]ust as insidious are subtle references."). Indeed, if we turn a blind eye, we could hardly call ourselves a justice system. Our Supreme Court has emphasized that we have a duty to increase access to justice, reduce and eradicate racism and prejudice, and continue to develop our legal system into one that serves the ends of justice. *Henderson v. Thompson*, ___ Wn. App. 2d ___, 518 P.3d 1011, 1016 (2022). We endeavor to do so. Accordingly, we reject the suggestion by Cascadia and its counsel and instruct that they refrain from injecting these arguments into our proceedings.

[3] There is conflicting information about this invoice in the record. Cascadia asserts they never received the invoice. Velazquez Framing asserts it dropped the invoice off at Cascadia's office in Lakewood, but Cascadia's president runs Cascadia's office out of his home in Gig Harbor.

3

No. 56513-7-II

II. THE LIEN

In January 2020, Velazquez Framing filed a lien for both labor and materials on the Lakewood home at the Pierce County Auditor's Office and mailed Cascadia a copy. There is no evidence Velazquez Framing provided Cascadia with any prelien notice for its work on the Lakewood home. In September, Velazquez Framing filed a complaint against Cascadia seeking payment and to foreclose on its lien. Cascadia and Velazquez Framing later filed a stipulated order for cash deposit and release of lien. Cascadia deposited $37,462.67 into the court registry and the lien was released from the Lakewood home.

III. SUMMARY JUDGMENT AND MOTION FOR RECONSIDERATION

In October 2021, Cascadia filed a motion for summary judgment seeking dismissal of the complaint due to Velazquez Framing's failure to provide Cascadia with prelien notice. At summary judgment, Cascadia argued RCW 60.04.031(1) required prelien notice from Velazquez Framing because the lien was for both labor and materials and no exception to prelien notice applied. Additionally, Cascadia argued that if a lien included both labor and materials, subcontractors could not segregate the two categories in the lien in an attempt to collect the labor portion.

Velazquez Framing responded that no prelien notice was required for its labor under RCW 60.04.021 and RCW 60.04.031(1), and the labor portion of a lien could be segregated from the materials portion.

The superior court ruled that Velazquez Framing did not fall within one of the exceptions for prelien notice in RCW 60.04.031(2) and, therefore, it could not enforce the lien. Accordingly, the superior court granted Cascadia's summary judgment motion.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56513-7-II

Velazquez Framing moved for reconsideration, arguing that the superior court did not properly interpret RCW 60.04.031(1) and, in the alternative, that Velazquez Framing was a "laborer" under RCW 60.04.031(2). The superior court denied reconsideration, deciding that Velazquez Framing was not a "laborer" under RCW 60.04.031(2).

IV.  SUPERSEDEAS CASH DEPOSIT

Meanwhile, the superior court stayed the remission of the $37,462.67 in the court registry to provide Velazquez Framing an opportunity to file a motion for reconsideration and provide Velazquez Framing a means of recovery should it win on appeal.

Later, the superior court granted Velazquez Framing's motion to further stay the disbursement of funds pending appeal, but required Velazquez Framing to deposit an $18,750 supersedeas cash deposit into the court registry to stay the disbursement.

Velazquez Framing appeals the superior court's order on Cascadia's motion for summary judgment and the superior court's order denying its motion for reconsideration.

ANALYSIS

I.  PRELIEN NOTICE REQUIREMENTS UNDER CHAPTER 60.04 RCW

Velazquez Framing argues the superior court erred because Velazquez Framing was not required to provide prelien notice for its labor under RCW 60.04.031(1). We disagree.

A.  LEGAL PRINCIPLES

We review summary judgment motions de novo. *M.E. through McKasy v. City of Tacoma*, 15 Wn. App. 2d 21, 31, 471 P.3d 950 (2020), *review denied*, 196 Wn.2d 1035 (2021). "Summary judgment is appropriate if the pleadings, affidavits, depositions, and admissions demonstrate the absence of any genuine issue of material fact and the moving party is entitled to judgment as a

5

No. 56513-7-II

matter of law." *Id.*; CR 56(c). We view "the facts and the reasonable inferences from those facts in the light most favorable to the nonmoving party." *Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003).

Interpretation of a statute is a question of law that we review de novo. *City of Spokane v. County of Spokane*, 158 Wn.2d 661, 672-73, 146 P.3d 893 (2006); *Ruvalcaba v. Kwang Ho Baek*, 175 Wn.2d 1, 6, 282 P.3d 1083 (2012). Our fundamental objective when determining the meaning of a statute "is to ascertain and carry out the [l]egislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "Where a 'statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.' " *Inland Empire Dry Wall Supply Co. v. W. Sur. Co.*, 189 Wn.2d 840, 843, 408 P.3d 691 (2018) (quoting *Campbell & Gwinn*, 146 Wn.2d at 9-10).

Legislative intent is determined from the text of the statutory provision in question, the context in which that provision is found, and the statutory scheme as a whole. *City of Seattle v. Long*, 198 Wn.2d 136, 148, 493 P.3d 94 (2021). "Whenever possible, statutes are to be construed so 'no clause, sentence or word shall be superfluous, void, or insignificant.' " *Id.* (internal quotation marks omitted) (quoting *Kasper v. City of Edmonds*, 69 Wn.2d 799, 804, 420 P.2d 346 (1966)). " '[W]here a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature.' " *Magney v. Truc Pham*, 195 Wn.2d 795, 803, 466 P.3d 1077 (2020) (quoting *Wash. Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County*, 77 Wn.2d 94, 98, 459 P.2d 633 (1969)).

6

No. 56513-7-II

"Only when the plain, unambiguous meaning cannot be derived through such an inquiry will it be 'appropriate [for a reviewing court] to resort to aids to construction.' " *Sheehan v. Cent. Puget Sound Reg'l Transit Auth.*, 155 Wn.2d 790, 797, 123 P.3d 88 (2005) (alteration in original) (quoting *Campbell & Gwinn*, 146 Wn.2d at 12). A statute is ambiguous if it is susceptible to more than one reasonable interpretation. *Five Corners Fam. Farmers v. State of Wash.*, 173 Wn.2d 296, 305, 268 P.3d 892 (2011). When a statute is ambiguous, we may "look to the legislative history of the statute and the circumstances surrounding its enactment to determine legislative intent." *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003).

We review a superior court's interpretation of chapter 60.04 RCW de novo. *Intermountain Elec., Inc. v. G-A-T Bros. Constr., Inc.,* 115 Wn. App. 384, 390, 62 P.3d 548 (2003). "[I]f it is determined a party's lien is covered by chapter 60.04 RCW, the statute is to be liberally construed to provide security for all parties intended to be protected by its provisions.*" Estate of Haselwood v. Bremerton Ice Arena, Inc.*, 166 Wn.2d 489, 498, 210 P.3d 308 (2009); RCW 60.04.900.

B. APPLICATION

Resolving whether Velazquez Framing was required to provide Cascadia with prelien notice requires examining chapter 60.04 RCW, which governs mechanics and materialmen's liens.

RCW 60.04.021 generally provides for construction liens, stating:

Except as provided in RCW 60.04.031, any person furnishing labor, professional services, materials, or equipment for the improvement of real property shall have a lien upon the improvement for the contract price of labor, professional services, materials, or equipment furnished at the instance of the owner, or the agent or construction agent of the owner.

"Any person" includes laborers. *Guillen v. Pearson*, 195 Wn. App. 464, 472, 381 P.3d 149 (2016), *review denied*, 187 Wn.2d 1005 (2017). "Furnishing labor, professional services,

7

No. 56513-7-II

materials, or equipment" is defined as "the performance of any labor or professional services, the contribution owed to any employee benefit plan on account of any labor, the provision of any supplies or materials, and the renting, leasing, or otherwise supplying of equipment for the improvement of real property."  RCW 60.04.011(4).  "Labor" is defined as the "exertion of the powers of body or mind performed at the site for compensation."  RCW 60.04.011(7).

RCW 60.04.031 provides that some liens require prelien notice from the lienor.  Subsection (1) states, in part:

> Except as otherwise provided in this section, every person furnishing professional services, materials, or equipment for the improvement of real property shall give the owner or reputed owner notice in writing of the right to claim a lien.

Exceptions to the prelien notice requirement are provided in RCW 60.04.031(2).  That subsection provides:

> Notices of a right to claim a lien shall not be required of:
> (a) Persons who contract directly with the owner or the owner's common law agent;
> (b) Laborers whose claim of lien is based solely on performing labor; or
> (c) Subcontractors who contract for the improvement of real property directly with the prime contractor, except as provided in subsection (3)(b) of this section.

If a subcontractor fails to provide prelien notice as required by the statute, a court will not enforce the lien.  RCW 60.04.031(6) states:

> A lien authorized by this chapter shall not be enforced unless the lien claimant has complied with the applicable provisions of this section.

From these statutes, Velazquez Framing contends that subcontractors are not required to provide prelien notice related to any labor.  Velazquez Framing argues RCW 60.04.031 must be read in conjunction with RCW 60.04.021.  Since RCW 60.04.031(1) does not include the word "labor," Velazquez Framing argues the legislature meant to exclude labor from the prelien notice

8

No. 56513-7-II

requirement. *Compare* RCW 60.04.021 ("any person furnishing *labor*, *professional services*, *materials*, or *equipment* for the improvement of real property shall have a lien . . ." (emphasis added)), *with* RCW 60.04.031 ("every person furnishing *professional services*, *materials*, or *equipment* for the improvement of real property shall give the owner or reputed owner notice . . ." (emphasis added)).

Cascadia responds that this construction must be incorrect because of the exceptions listed in RCW 60.04.031(2). If it were true, as Velazquez Framing urges, that *all* liens for labor are excluded from the requirement for prelien notice, then the provisions of RCW 60.04.031(2) regarding laborers in subsection (b) would be utterly superfluous.[4] *See* RCW 60.04.031(2)(b) (no prelien notice is required of "[l]aborers whose claim of lien is based solely on performing labor").

1. Plain Language of Chapter 60.04 RCW

To resolve the competing statutory interpretations, we begin with the plain language of chapter 60.04 RCW. As noted above, RCW 60.04.021 is the provision that generally identifies who is entitled to a lien under the statute. That section permits liens in four categories: (1) labor, (2) professional services, (3) materials, and (4) equipment, subject to the limitations in RCW 60.04.031.

RCW 60.04.031(1), in turn, requires that persons furnishing things in three of those four categories, (1) professional services, (2) materials, or (3) equipment, must provide prelien notice to the owner unless they fall within an exception in RCW 60.04.031(2). Again, RCW 60.04.031(2) lists those that are *not* subject to the prelien notice requirement:

---

[4] Velazquez Framing acknowledges that RCW 60.04.031(2)(b) is superfluous under its interpretation.

No. 56513-7-II

> (a) Persons who contract directly with the owner or the owner's common law agent;
>
> (b) Laborers whose claim of lien is based solely on performing labor; or
>
> (c) Subcontractors who contract for the improvement of real property directly with the prime contractor, except as provided in subsection (3)(b) of this section.

Reading these provisions together, irreconcilable internal inconsistencies become apparent. A second-tier subcontractor would arguably not need to provide prelien notice for labor since "labor" does not appear in RCW 60.04.031(1). But, as both parties point out, any general carve-out of prelien notices for *all* liens involving labor would render the laborer exception in RCW 60.04.031(2)(b) superfluous.

Alternatively, requiring every second-tier subcontractor not contracting with the owner or prime contractor to provide prelien notice for a labor lien is also inconsistent with the plain language of the statute. RCW 60.04.031(1) omits "labor" in its prelien notice requirements, suggesting, viewed in isolation, that the legislature might have intended to exempt all liens for labor from this requirement.

A plain language reading of RCW 60.04.021 with RCW 60.04.031, therefore, leads to two unreasonable results. To exempt prelien notice for all labor would render parts of the statute superfluous, but to require all second-tier subcontractors provide prelien notice for labor is also inconsistent with the plain language of portions of the statute. Because there are no reasonable interpretations of the language, there is not a plain, unambiguous meaning of the statute. Therefore, it is appropriate to resort to aids to construction to help discern legislative intent. Here, a review of legislative history provides a viable construction aid to determine which interpretation is most consistent with legislative intent.

No. 56513-7-II

    2. Legislative History

Although legislative history is often of limited utility, here, the legislature made changes to the lien statutes, chapter 60.04 RCW, in 1991 and provided explanations of its intent within the bill reports. That year, even though the legislature attempted to "moderniz[e] the language of the existing law without making substantive changes," there were several major changes. S.B. REP. ON SUBSTITUTE S.B. 5497, at 2, 52nd Leg., Reg. Sess. (Wash. 1991).[5] The legislature specifically wanted to address "consumer protection problems relating to construction liens." *Id.* at 1.

The legislature was clearly concerned with homeowners being subjected to liens from subcontractors about whom they were unaware. In its final bill report, the Washington State Senate's and House of Representatives' committees stated:

> The most common problem is in the home repair or remodeling area and typically occurs as follows:
>
> A homeowner engages a general contractor to make a repair on their home or do a remodeling project. The contractor completes the job, having employed subcontractors and purchased materials which have been incorporated into the job. The homeowner probably has made periodic payments with full payment made upon completion and the satisfaction of the owner that the job has been done properly. It is then discovered that a material supplier or subcontractor with whom the homeowner has never dealt directly has placed a lien on the homeowner's property, because they have not been paid by the prime contractor.

FINAL B. REP. ON SUBSTITUTE S.B. 5497, at 1, 52nd Leg., Reg. Sess. (Wash. 1991).

---

[5] Velazquez Framing argues case law interpreting the former prelien notice statute supports its position. Velazquez Framing relies on *Hallett v. Phillips*, 73 Wn. 457, 132 P. 51 (1913); *Culbert v. Lindvall*, 73 Wn. 643, 132 P. 729 (1913); *Northlake Concrete Prods., Inc. v. Wylie*, 34 Wn. App. 810, 663 P.2d 1380 (1983); and *Pac. Erectors, Inc. v. Gall Landau Young Const. Co., Inc.*, 62 Wn. App. 158, 813 P.2d 1243 (1991), *review denied*, 118 Wn.2d 1015 (1992). None of these cases interpret the lien statutes after the 1991 changes. Because these cases predate the extensive legislative amendments, they are not necessarily relevant or helpful in ascertaining the legislative intent.

11

No. 56513-7-II

The final senate bill report reiterated a similar concern for commercial construction by suggesting that the law excepts out subcontractors who contract directly with the prime contractor from prelien notice, but that others, whom the property owner may not know, must still provide notice. The bill report stated:

> In commercial construction, those who contract directly with the owner are not required to give preclaim notice. Subcontractors who contract directly with prime contractors are not required to give preclaim notice. All other participants are required to give preclaim notice, which may be given at any time, but only protects lien rights for activity occurring after a date which is 60 days prior to giving notice.

> Laborers are not required to give preclaim lien notice, as in current law.

*Id.* at 2.

In its Substitute House Historical Bill Report, under its background section, the house committee reported, "A notice of the right to claim a lien is required to establish a lien for material and equipment supplied for the project (not labor liens) . . . ." H.B. REP. ON HISTORICAL SUBSTITUTE S.B. 5497, at 1, 52nd Leg., Reg. Sess. (Wash. 1991). In contrast, in its bill summary section, the house committee provided:

> New notice requirements for the right to claim a lien are created . . . .

> General notice. A notice of the right to claim a lien is not required for a person supplying labor, or for a person providing professional services, materials, or equipment who contracts directly with the property owner, or for a subcontractor who contracts directly with the prime contractor.

*Id*. at 3-4.

Notably, the legislative reports refer to "laborers," not subcontractor labor. Further, viewing these bill reports as a whole, the legislature clearly wanted to modernize the lien laws to protect consumer interests. The legislature specifically wished to address the issue of property

12

No. 56513-7-II

owners paying twice for services because the owners had no knowledge of second-tier subcontractors. This legislative history suggests the intent that references to "labor" are limited to laborers, who remain exempt from prelien notice for their labor.

Here, the parties' positions implicate two competing statutory interpretations of chapter 60.04 RCW. Once we avail ourselves of the aid in construction to discern legislative intent provided by the legislative history of the statutory changes in 1991, one interpretation stands out as more consistent with this legislative intent. Simply put, not all liens for labor are exempt from prelien notice requirements. The legislative history makes it clear that the legislature wanted to protect both owners and laborers. To allow second-tier subcontractors to lien for their labor without any prelien notice would not protect owners and would be unnecessary to protect laborers. Requiring prelien notice for second-tier subcontractor labor aligns with this legislative intent.

Therefore, consistent with the legislative history and intent, we hold that RCW 60.04.031 requires prelien notice from second-tier subcontractors for their labor.

Velazquez Framing provided no prelien notice to Cascadia for its labor. Velazquez Framing does not fall within an exception in RCW 60.04.031(2).[6] Because Velazquez Framing failed to provide Cascadia with any prelien notice, it lost its ability to enforce its lien. The superior court did not err in granting Cascadia's summary judgment motion.

---

[6] Velazquez Framing concedes the term "laborer" is limited to employees and it, therefore, is not a laborer under the exception. Velazquez Framing further concedes it does not fall within the other two exceptions.

No. 56513-7-II

II.  MOTION TO RECONSIDER

Velazquez Framing argues the superior court erred by denying its motion for reconsideration.  We disagree.

We review a trial court's denial of a motion for reconsideration for abuse of discretion. *Rivers v. Wash. State Conf. of Mason Contractors*, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002).  A superior court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or untenable reasons.  *Id.* at 684-85.

The superior court denied the motion for reconsideration because it determined that Velazquez Framing was required to provide prelien notice since it did not fall within an exception of RCW 60.04.031(2).  Because, as discussed above, this conclusion was consistent with chapter 60.04 RCW, the superior court did not abuse its discretion in denying the motion for reconsideration.

III.  ATTORNEY FEES

Cascadia seeks attorney fees under RAP 18.1 and RCW 60.04.181.[7]  RAP 18.1(a) allows us to award reasonable attorney fees if an applicable law gives the party the right to recover attorney fees.  Chapter 60.04 RCW provides for an award of reasonable attorney fees to the prevailing party for "necessary expenses incurred by the attorney in the superior court [and] court of appeals . . . ."  RCW 60.04.181(3).

---

[7] Velazquez Framing also seeks its $18,740 supersedeas cash bond deposit.  A supersedeas bond is a means of staying enforcement of a trial court judgment while on appeal.  RAP 8.1(a).  "The purpose of a supersedeas bond is to pay the judgment if affirmed on appeal . . . ."  *Nyby v. Allied Fid. Ins. Co.*, 42 Wn. App. 543, 547, 712 P.2d 861 (1986).  As shown above, Velazquez Framing has not prevailed in this appeal and, therefore, is not entitled to this deposit.

No. 56513-7-II

As the prevailing party on this appeal, Cascadia is entitled to reasonable attorney fees for this appeal.

CONCLUSION

RCW 60.04.031 requires second-tier subcontractors provide prelien notice for their labor. Accordingly, we affirm the superior court's grant of summary judgment to Cascadia.

PRICE, J.

We concur:

CRUSER, A.C.J.

VELJACIC, J.

15